UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

MASPETH FEDERAL SAVINGS AND LOAN                    Case No:
ASSOCIATION,

                                Plaintiff,                    Jury Trial Demanded

-against-                                          **COMPLAINT**


FIDELITY INFORMATION SERVICES, LLC

                              Defendant
-------------------------------------------------------------------X

Plaintiff, MASPETH FEDERAL SAVINGS AND LOAN ASSOCIATION ("Maspeth or "Plaintiff"), by and through its attorney, Mark L. Cortegiano, Esq., as and for its complaint against defendant, FIDELITY INFORMATION SERVICES, LLC ("FIS" or "Defendant") alleges as follows:

### PARTIES

1.      Plaintiff, Maspeth Federal Savings and Loan Association, is a federally chartered savings and loan association that engages in the business of consumer and commercial banking with headquarters at 56-18 69th Street, Maspeth NY  11378, and five branch offices located in Queens and Nassau counties.  Maspeth transacts in the business of, *inter alia*, originating and servicing mortgages within this District.

2.      Upon information and belief, defendant, Fidelity Information Services, LLC, is a limited liability company organized and existing under the laws of Arkansas, with its headquarters located in Jacksonville, Florida.

3.      FIS is a national payment processing company in the business of, *inter alia*, providing banking and payment technologies and services, including remittance, lock box

processing and conversion services, to banks and other financial institutions throughout the United States.

## JURISDICTION AND VENUE

4.      This court has subject matter jurisdiction over this case pursuant to 28 U.S.C § 1332(a)(1) because there is diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

5.      Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. §1391(b)(2) because a  substantial portion of the events giving rise to the claims asserted herein occurred in this district.

## BACKGROUND FACTS

6.      At all relevant times, Maspeth contracted with defendant for defendant to provide Maspeth with various banking, remittance, processing and lockbox technologies and services. (The "FIS Agreements").

7.      At all relevant times, defendant maintained and serviced the United States Postal Service box (the "Lockbox") to which some of Maspeth's customers send their mortgage payments ("Remittances").

8.      As of on or about April 30, 2013, the agreements between Maspeth and defendant included a Remittance/Lockbox Processing Services Addendum (the "Lockbox Addendum") which governed the terms and conditions by which FIS was to retrieve and process Remittances by Maspeth's customers after that date.

9.      Upon information and belief, at all relevant times prior to April 30, 2013, defendant knew, was aware of or should have known or been aware of Maspeth's relevant banking and mortgage policies, procedures, protocols and processes.

10.     Upon information and belief, at all relevant times prior to April 30, 2013, defendant or its predecessor(s) collected and processed Lockbox Remittances for Maspeth.

11.     Upon information and belief, at all relevant times, defendant also provided the "core processing services" of Maspeth's mortgage servicing operations, which includes the crediting of Lockbox Remittances to mortgage accounts.

12.     At all relevant times, Maspeth maintained a policy that any Remittance received by Maspeth by 8:00 p.m. on the 16th day of the month when due would not incur a late charge. (the "Late Fee Policy").  The Late Fee Policy was in effect for years prior to the Lockbox Addendum and, upon information and belief, defendant knew about this policy or should have known about this policy in order to perform any of the services that it provided to Maspeth.

13.     Both before and after the April 30, 2013 Lockbox Addendum, FIS was to collect the Remittances from the Lockbox, review and process said Remittances and enter the payment information into Maspeth's core processing system so that the Remittances processed by FIS were credited to Maspeth's customer's mortgage accounts on the day they were delivered to the Lockbox without any further action by Maspeth.

14.     Upon information and belief, both before and after the April 30, 2013 Lockbox Addendum, FIS was to collect the Remittances from the Lockbox, review and process the Lockbox Remittances and enter the payment information into Maspeth's core processing system so that the Remittances processed by FIS were credited to Maspeth's customer's accounts in accordance with the Late Fee Policy.

15.     Upon information and belief, at all relevant times, FIS was required to collect, review and process the Lockbox Remittances and enter the payment information into Maspeth's core processing system every day, except weekends and bank holidays.

16.     Upon information and belief, at all relevant times, as per the FIS Agreements, FIS sent a daily "All Items Report" to indicate what mortgage payments were processed on a given day from the Remittances collected from the Lockbox.

17.     Upon information and belief, FIS also maintained separate reports, not provided to Maspeth on any basis, as to traceable mail items collected from the Lockbox every day.

18.     On or about November 20, 2013  Maspeth was served with a class action lawsuit filed on November 13, 2013 in the United States District Court for the Eastern District of  New York, entitled *Samuel Friedman, Individually and on Behalf of All Others Similarly Situated v. Maspeth Federal Loan and Savings Association*, 13-CV-06295-JBW-SMG (the "Class Action Lawsuit").

19.     The Class Action Lawsuit asserted causes of action against Maspeth for violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §2601 *et seq.*, violations of the  New York General Business Law §349, Breach of the Implied Duties of Good Faith and Fair Dealing, Breach of Contract and Unjust Enrichment.

20.     Specifically, the Class Action Lawsuit alleged, *inter alia,* that Mr. Friedman and other Maspeth mortgagors of the class (collectively the "Mortgagors") were improperly assessed late fees by Maspeth even though their mortgage payments were timely remitted and delivered to the Lockbox.  (The complaint and amended complaint to the Class Action Lawsuit can be found on the ECF Docket System for the United States District Court for the Eastern District of New York under Case No. 13-CV-06295 at entries "1" and "17", respectively).

21.     In fact, the Class Action Lawsuit alleged that certain Remittances sent by traceable mail were delivered to the Lockbox or signed for at the Lockbox in a timely manner *vis*

*a vis* the Late Fee Policy, but that said Remittances were not processed as timely and instead the Mortgagors were charged a late fee.

22.     Upon information and belief, FIS, as the sole entity responsible for servicing the Lockbox for Maspeth at all times relevant to the Class Action Lawsuit, failed to properly or timely service the Lockbox, process the Remittances or credit the Mortgagors' accounts with payment.

23.     On or about December 6, 2013, Maspeth sent a written Notice of Claim and Demand for Indemnification to FIS which, *inter alia*, notified FIS of the Class Action Lawsuit and provided them with a copy of the complaint therein, and demanded indemnification on the claim.

24.     On or about December 20, 2013, FIS acknowledged receipt of the Notice of Claim and Demand for Indemnification, but neither accepted nor rejected the claim or demand and made no offer to take any action other than to "research" the issues in the Class Action Lawsuit.

25.     Thereafter, Maspeth defended the Class Action Lawsuit at its own cost and expense.

26.     On or about October 3, 2014, Maspeth again demanded in writing that FIS indemnify Maspeth for its losses, "including, but not limited to any late fees that [Maspeth] refunds as part of a class action settlement, Maspeth's defense fees and any award of attorneys' fees that the court may make to plaintiff's counsel."

27.     On or about October 22, 2014, defendant notified that Maspeth that it refused to indemnify Maspeth as Maspeth demanded, citing various provisions of the Lockbox Addendum.

28.     Thereafter, in accordance with the General Terms and Conditions of the agreement between Maspeth and defendant at the time, Maspeth and FIS engaged in negotiations, including a conference call between the parties and their counsel on or about October 23, 2014.  The negotiations failed to resolve Maspeth's claim, and defendant continued to refuse indemnify Maspeth for the Class Action Lawsuit.

29.     On or about December 19, 2014, Maspeth entered into and executed a settlement agreement to resolve the Class Action Lawsuit (the "Stipulation of Settlement").   (The Stipulation of Settlement can be found on the ECF Docket System for the United States District Court for the Eastern District of New York under Case No. 13-CV-06295 at "Exhibit 3" to entry "48").

30.     Under the terms of the Stipulation of Settlement, Maspeth made available over $200,000 to its Mortgagors who were potential claimants in the Class Action Lawsuit to return incorrect late fees.  These incorrect late fees were actually the result of defendant's breach of the terms of the FIS Agreements and defendant's gross negligence.  Maspeth also agreed to pay up to $535,000 in plaintiff's attorneys' fees, subject to court approval.

31.     After a motion on notice and a hearing, on or about April 23, 2015, the Court approved the Stipulation of Settlement by order and judgment and awarded $535,000 in legal fees to plaintiffs' counsel.

32.     In or about May 2015, Maspeth paid plaintiffs' attorneys $535,000.00 pursuant to the judgment in the Class Action Lawsuit.

33.     In or about July 2015, Maspeth paid $22,130.95 to qualified claimants who filed claims pursuant to the approved settlement.

34.     Additionally, Maspeth has incurred at least, $300,000 in legal fees in defending and resolving the Class Action Lawsuit.

35.     As a direct and proximate result of defendant's acts or omissions, plaintiff has been damaged in an amount not less than $857,130.95.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract)

36.     Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "35" of the Complaint as though fully set forth at length herein.

37.     Maspeth performed any and all obligations under the FIS Agreements and satisfied the conditions thereunder.

38.     Defendant breached its obligations under the FIS Agreements by failing to properly service the Lockbox.

39.     Defendant breached its obligations under the FIS Agreements by failing to timely and/or properly credit Mortgagors' Lockbox Remittances in accordance with Maspeth's Late Fee Policy.

40.     Defendant breached its obligations under the FIS Agreements by failing to properly and/or accurately report the Remittances received in or collected from the Lockbox.

41.     Defendant breached its obligations under the FIS Agreements by failing to defend Maspeth in the Class Action Lawsuit.

42.     With regard to certain Remittances after the effective date of the Lockbox Addendum, defendant breached the Lockbox Addendum by failing to properly collect, process, reconcile, deposit and report the Remittances per the terms of the Lockbox Addendum.

43.     Defendant's breaches of the FIS Agreements and the Lockbox Addendum were the direct and proximate cause of the damages in the Class Action Lawsuit and the costs and

expenses incurred by Maspeth in defending and settling the Class Action Lawsuit, and, as such, Maspeth has been damaged by defendant in an amount not less than $857,130.95 plus interest, costs, disbursements and reasonable attorneys' fees.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Gross Negligence)

44.     Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "35" of the Complaint as though fully set forth at length herein.

45.     FIS owed a duty to the Mortgagors and Maspeth to timely collect and process the Lockbox Remittances and credit the Mortgagors' accounts.

46.     FIS further owed a duty to the Mortgagors and Maspeth to timely collect and process the Lockbox Remittances and credit the Mortgagors' accounts in accordance with Maspeth's Late Fee Policy which policy was known to or should have been known to defendant.

47.     FIS breached its duties to the Mortgagors and Maspeth by failing to timely and properly collect and process the Remittances from the Lockbox and to timely and properly credit the Mortgagor's accounts.

48.     FIS breached its duties to the Mortgagors and Maspeth by failing to timely and properly collect and process the Remittances from the Lockbox and to timely and properly credit the Mortgagor's accounts in accordance with Maspeth's Late Fee Policy, despite the fact that defendant knew of should have known Maspeth's Late Fee Policy .

49.     FIS's servicing of both the Lockbox and Maspeth's core processing system without properly accounting for the Late Fee Policy constitutes gross negligence.

50.     Upon information and belief, FIS serviced the Lockbox and Maspeth's core processing system with willful disregard for Maspeth's Late Fee Policy to the detriment of the Mortgagors and Maspeth.

51.     As a direct and proximate result of FIS's breach of its duties, late fees were improperly charged to Mortgagors, and Maspeth was required to reimburse the Mortgagors those late fees and pay plaintiff's counsel's legal fees in the Class Action Lawsuit of $535,000.00 plus incur its own legal fees of not less than $300,000.00.

52.     As a direct and proximate result of the foregoing Maspeth has been damaged in an amount not less than $857,130.95 plus interest, costs, disbursements and reasonable attorneys' fees.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Contractual Indemnification)

53.     Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "52" of the Complaint as though fully set forth at length herein.

54.     Pursuant to the FIS Agreements, FIS is obligated to defend, indemnify and hold harmless Maspeth from and against any and all damages, costs, and expenses of a third party awarded against Maspeth by a judgment or settlement agreement for any action, litigation or claim by a third party alleging personal injury or property damage caused by FIS's gross negligence or willful misconduct in connection with the FIS Agreements.

55.     As is set forth above at paragraphs "1" through "52" above, defendant's actions constitute gross negligence or willful misconduct in connection with the FIS Agreements.

56.     As such, FIS is responsible to indemnify Maspeth for the damages, costs and expenses resulting from the settlement of and judgment in the Class Action Lawsuit.

57.     By reason of the foregoing, Maspeth is entitled to contractual indemnification from FIS for all attorneys' fees and monetary damages resulting from the settlement and judgment in the Class Action Lawsuit, as well as all attorneys' fees incurred by Maspeth in

defending the Class Action Lawsuit, for a total amount of not less than $857,130.95 plus interest, costs, disbursements and reasonable attorneys' fees.

<div align="center">

**AS AND FOR A FOURTH CAUSE OF ACTION**
**(Common Law Indemnification)**

</div>

58.     Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "57" of the Complaint as though fully set forth at length herein.

59.     Any damages awarded to the plaintiffs in the Class Action Lawsuit which were alleged to have been caused by Maspeth were actually caused by the gross negligence, recklessness and willful misconduct of FIS in failing to timely and properly collect and process the Lockbox Remittances and credit the Mortgagors' accounts and to do so in accordance with Maspeth's Late Fee Policy which policy was known to or should have been known to defendant.

60.     By reason of the foregoing, Maspeth is entitled to contractual indemnification from FIS for all attorneys' fees and monetary damages resulting from the settlement and judgment in the Class Action Lawsuit, as well as all attorneys' fees incurred by Maspeth in defending the Class Action Lawsuit, for a total amount of not less than $857,130.95 plus interest, costs, disbursements and reasonable attorneys' fees.

**WHEREFORE,** Plaintiffs respectfully demand judgment against Defendant, Fidelity Information Services, LLC as follows:

a.     On the first cause of action, damages against defendant in the amount of $857,130.95  plus, attorney's fees, costs, disbursements and expenses;

b.     On the second cause of action, damages against defendant in the amount of $857,130.95  plus attorney's fees, costs, disbursements, expenses;

c.     On the third cause of action, damages against defendant in the amount of $857,130.95 plus attorney's fees, costs, disbursements, expenses;

d.      On the fourth cause of action, damages against defendant in the amount of $857,130.95 plus attorney's fees, costs, disbursements, expenses;

e.      Awarding such other and further relief as this Court deems just, proper and equitable.

Dated: Middle Village, New York
       October 20, 2015

<div style="margin-left: 50%;">

/s/Mark L. Cortegiano
Mark L. Cortegiano, Esq.
65-12 69th Place
Middle Village, NY 11379
718-894-9500
Attorney for Plaintiff

</div>