UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MASPETH FEDERAL SAVINGS AND LOAN ASSOCIATION, | : | |
| | : | |
| | : | |
| Plaintiff, | : | Case No. 1:15-cv-06006-WFK-CLP |
| | : | |
| -against- | : | |
| | : | |
| FIDELITY INFORMATION SERVICES, LLC, | : | |
| | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |
| | : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

**Fox Rothschild LLP**
100 Park Avenue, 15th Floor
New York, NY 10017
Tel: (212) 878-7900
Fax: (212) 692-0940
*Attorneys for Defendant*
Fidelity Information Services, LLC.

## TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.   STATEMENT OF FACTS .................................................................................... 1

III.  STANDARD OF REVIEW ................................................................................. 3

IV.   ARGUMENT .......................................................................................................... 5

    A.   Maspeth's Breach of Contract, Contractual Indemnification, and Common
        Law Indemnification Claims Fail as a Matter of Law. .......................................... 5

        1.   Choice of Law Analysis .................................................................... 5

        2.   Maspeth's Breach of Contract Claim is Barred Under the Agreements ..... 6

        3.   Maspeth's Contractual Indemnification Claim Falls Outside of the
            Scope of the Agreements' Indemnification Provisions .......................... 10

        4.   Maspeth's Common Law Indemnification Claim Fails Based on the
            Existence of the Valid, Enforceable Agreements ................................. 12

    B.   Maspeth's Gross Negligence Claim Fails as a Matter of Law ............................ 13

        1.   Choice of Law Analysis .................................................................... 13

        2.   Maspeth Fails to Plead Sufficient Facts Alleging a Cause of Action
            for Gross Negligence .................................................................... 13

V.    CONCLUSION .................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...........................................................................................................4

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 546 (2007).................................................................................................4

*Blanchard v. Blanchard,*
201 N.Y. 134 (N.Y. 1911) ..............................................................................................12

*Burns v. Delaware Charter Guarantee & Trust Co.,*
805 F.Supp.2d 12 (S.D.N.Y. 2011) ................................................................................13

*Chiste v. Hotels.com L.P.,*
756 F.Supp.2d 382 (S.D.N.Y. 2010)................................................................................5

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.,*
70 N.Y.2d 382 (N.Y. 1987) ............................................................................................12

*Colnaghi, USA, Ltd. v. Jewelers Protection Services, Ltd.,*
81 N.Y.2d 821 (N.Y. 1993) ............................................................................................13

*CSC Scientific Co., Inc. v. Manorcare Health Services, Inc.,*
867 F.Supp.2d 368 (S.D.N.Y. 2011)..............................................................................12

*DeJesus v. Sears, Roebuck & Co.,*
87 F.3d 65 (2d Cir. 1996).................................................................................................4

*Dormitory Authority of State of N.Y. v. Scott,*
160 A.D.2d 179 (1st Dep't 1990) ...................................................................................11

*Facilities Development Corp. v. Miletta,*
180 A.D.2d 97 (3rd Dep't 1992)....................................................................................11

*Franklin St. Development Ltd. v. Bilow & Goldberg & Associates,*
1997 WL 795781 (S.D.N.Y. 1997)................................................................................11

*Frasier v. General Elec. Co.,*
930 F.2d 1004, 1007 (2d Cir. 1991)................................................................................4

*Freedman v. Chemical Constr. Corp.*,
43 N.Y. 2d 260 (NY App. Ct. 1977) .................................................................5

*Grund v. Delaware Charter Guarantee & Trust Co.*,
788 F.Supp.2d 226 (S.D.N.Y. 2011) ..............................................................13

*Hallinan v. Republic Bank & Trust Co.*,
519 F.Supp.2d 340 (S.D.N.Y. 2007) ................................................................8

*Harris v. Mills*,
572 F.3d 66 (2d Cir. 2009) ..............................................................................4

*Hishon v. King & Spalding*,
467 U.S. 69, 73 (1984) .....................................................................................4

*Indus. Risk Insurers v. Port Auth. of N.Y. & N.J., et al.*,
 387 F.Supp.2d 299 (S.D.N.Y. 2005) ..............................................................14

*Lane v. Fein, Such and Crane, LLP*,
767 F.Supp.2d 382 (E.D.N.Y. 2011) ..............................................................13

*LaGuardia Assocs. v. Holiday Hospitality Franchising, Inc.*,
92 F.Supp.2d 119 (E.D.N.Y. 2000) .................................................................5

*Law Debenture Trust Co. of NY v. Maverick Tube Corp.*,
595 F.3d 458 (2d Cir. 2010) ............................................................................6

*Lazard Freres & Co. v. Protective Life Ins. Co.*,
108 F.3d 1531, 1539 (2d Cir. 1997) .................................................................5

*Madeleine L.L.C. v. Street*,
757 F.Supp.2d 403 (S.D.N.Y. 2010) ................................................................6

*Mancuso v. Rubin*,
52 A.D.3d 580 (2d Dep't 2008) .....................................................................14

*Manley v. AmBase Corp.*,
337 F.3d 237, 250 (2d Cir. 2003) ....................................................................6

*McCarthy v. Dunn & Bradstreet Corp.*,
482 F.3d 184 (2d Cir. 2007) ............................................................................3

*Metropolitan Life Ins. Co. v. Noble Lowndes Int'l Inc.*,
84 N.Y 2d 430 (N.Y. 1994) .......................................................................6, 14

*Nat'l Investor Servs. Corp. v. Integrated Fund Servs., Inc.,*
85 Fed.Appx. 779 (2d Cir. 2004) ............................................................8

*Net2Globe Int'l Inc. v. Time Warner Telecom of N.Y.,*
73 F.Supp.2d 436 (S.D.N.Y. 2013) .......................................................14

*New Falls Corp. v. Lall,*
2010 WL 2076937 (E.D.N.Y. 2010) .........................................................5

*Palda v. Gen. Dynamics Corp.,*
47 F.3d 872, 875 (7th Cir. 1995) ...............................................................4

*PNC Bank, Nat. Ass'n v. Wolters Kluwer Financial Services, Inc.,*
73 F.Supp.3d 358 (S.D.N.Y. 2014) ...................................................7, 8, 9

*Schonfeld v. Hilliard,*
218 F.3d 164 (2d Cir. 2000) .......................................................................8

*Taylor v. Vt. Dep't of Educ.,*
313 F.3d 768 (2d Cir. 2002) .......................................................................3

*Turtur v. Rothschild Registry Intern., Inc.,*
26 F.3d 304 (2d Cir. 1994) .........................................................................5

**Statutes**

Federal Rule of Civil Procedure 12(b)(6) ..........................................1, 3, 4

**Other Authorities**

5 Corbin, Corbin on Contracts, § 1068 (1964) ..........................................7

3 Dobbs, Dobbs Law of Remedies § 12.2(3) (1993) ..................................8

8 Williston on Contracts § 19:21 (4th ed.) (2009) .....................................6

## I.    **PRELIMINARY STATEMENT**

Defendant Fidelity Information Services, LLC ("FIS"), by and through its undersigned counsel, Fox Rothschild LLP, respectfully submits this Memorandum of Law in support of its Motion to Dismiss Plaintiff Maspeth Federal Savings and Loan Association's ("Maspeth") Amended Complaint for failure to state a claim upon which relief can be granted.   A copy of Maspeth's Amended Complaint is attached as Exhibit "A" to the Memorandum of Law.

Maspeth's claims all center on FIS's alleged failure to timely and properly credit mortgage payments Maspeth customers mailed to a post office box.   Count I asserts a claim for breach of contract, Count II asserts a claim for gross negligence, and Counts III and IV assert contractual and common law indemnification claims, respectively.   The Court should dismiss Maspeth's breach of contract, contractual indemnification, and common law indemnification claims because they are barred under the contracts that govern the relationship between the parties. The Court should also dismiss Maspeth's gross negligence claim because the facts alleged by Maspeth do not constitute gross negligence as a matter of law.

Accordingly, Maspeth's Amended Complaint fails as a matter of law and should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## II.    **STATEMENT OF FACTS**

Plaintiff is a federally chartered savings and loan association that engages in the business of consumer and commercial banking.  (Am. Compl., ¶ 1).  Defendant FIS is a national payment processing company that provides payment and banking technologies, including remittance, lockbox processing and conversion services, to financial institutions nationwide.   (Id. at ¶ 3).

Maspeth and FIS (initially through its subsidiary InterCept, Inc.) have had a contractual relationship since January 22, 2003. (Id. at ¶ 6-8). Specifically, the parties entered into two separate contracts during the relevant time period, the first on January 22, 2003 (the "Original

Agreement"),[1] and the second on April 30, 2013 (the "Latest Agreement") (collectively, the "Agreements"). A copy of the Original Agreement is attached as Exhibit "B." A copy of the Latest Agreement is attached as Exhibit "C." The Agreements provide that FIS, or its subsidiary, InterCept (the "Servicers"), were to maintain and service a United States Postal Service box (the "Lockbox") for Maspeth.   Maspeth customers would send their mortgage payments ("Remittances") to the Lockbox.   (Id. at ¶ 11). The Servicers would collect and process the Lockbox Remittances and enter Maspeth's mortgagors' payment information into a core processing system on a daily basis, excluding weekends and bank holidays. (Id. at ¶ 21). After collecting and processing the Lockbox Remittances, the Servicers would then send a daily report to Maspeth, identifying the Maspeth mortgagors whose payments had been received by the time FIS made its pick-up that day. (Am. Compl. at ¶ 22).

Maspeth maintained a policy with its customers that any Remittances received after 8:00 p.m. on the 16th day of the month would incur a penalty (the "Late Fee Policy"). (Id. at ¶ 17). Maspeth assessed these penalties based on the daily report it received from the Servicers. Maspeth's Late Fee Policy was flawed because it did not take into account the fact that on any given day Remittances could continue to arrive at the Lockbox after the Servicers had made their daily pick-up.  Such Remittances would not be recorded by the Servicers until the next date on which the Post Office was open. Thus on occasion Maspeth improperly penalized customers whose Remittances arrived at the Lockbox on the 16th of the month, but after FIS had made its daily pick-up.

---

[1] InterCept was a division of FIS at the time the Original Agreement was signed. On November 8, 2004, FIS purchased all of the outstanding stock of InterCept, InterCept merged into FIS, and FIS assumed all of InterCept's duties and obligations under the Original Agreement. *See* Exhibit B, FIS 0023.

On or about November 20, 2013, Maspeth was served with a class action lawsuit filed in the United States District Court for the Eastern District of New York, titled *Samuel Friedman, Individually and on Behalf of All Others Similarly Situated v. Maspeth Federal Loan and Savings Association*, 13-CV-06295-JBW-SMG (the "Class Action"). (Id. at ¶ 24). The Class Action alleged that certain Maspeth mortgagors improperly incurred penalties pursuant to the Late Fee Policy, even though their mortgage payments were timely delivered to the Lockbox. (Id. at ¶ 26). On or about December 19, 2014, Maspeth entered into a settlement agreement with members of the Class Action (the "Stipulation of Settlement"). (Id. at ¶ 35). As part of the Stipulation of Settlement, Maspeth paid $22,130.95 to qualified claimants in the Class Action as well as $535,000 for plaintiffs' attorney's fees. (Am. Compl. at ¶ 38-39). Maspeth alleges that it incurred at least an additional $300,000 in its own legal fees defending the Class Action. (Id. at ¶ 40).

Maspeth now contends that it sustained $857,130.95 in damages resulting from FIS's alleged failure to properly and timely service the Lockbox. (Id. at ¶ 41). Maspeth's breach of contract and indemnification claims are contractually barred. Maspeth's gross negligence claim is inadequate as a matter of law because it fails to plead sufficient facts to support such an action.

The Court should therefore dismiss the Amended Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

## III.   STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), the Court's review is "limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dunn & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)). Although the

pleading standard is a liberal one, "a complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *DeJesus v. Sears, Roebuck & Co.,* 87 F.3d 65, 70 (2d Cir. 1996) (quoting *Palda v. Gen. Dynamics Corp.*, 47 F.3d 872, 875 (7th Cir. 1995)).  Dismissal is warranted if it is clear that no relief can be granted under any set of facts that plaintiff can prove consistent with the allegations in the complaint. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Frasier v. General Elec. Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991).

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the pleading must contain allegations as to all elements essential to the legal theory under which recovery is sought, and must allege facts with sufficient particularity to state a recognized right of recovery under the cause of action.  A plaintiff has an "obligation to provide the grounds of his entitle[ment] to relief," which "requires more than labels and conclusions."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007).  Indeed, the Court need not credit "legal conclusions" in a claim or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)) (internal quotations and alteration omitted). A mere "formulaic recitation of the elements of a cause of action" will not suffice.  *Twombly*, 550 U.S. at 545.  Instead, plaintiff must allege facts to "raise a right to relief above the speculative level."  *Id.*  If a plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be denied."  *Id.* at 570.

## IV.   ARGUMENT

### A.   Maspeth's Breach of Contract, Contractual Indemnification, and Common Law Indemnification Claims Fail as a Matter of Law.

#### 1.   Choice of Law Analysis

In situations where, as here, a federal court located in the State of New York is exercising diversity jurisdiction, the court will consider New York's choice of law rules. *See New Falls Corp. v. Lall*, 2010 WL 2076937, at *2 (E.D.N.Y. 2010) ("A federal court exercising diversity jurisdiction applies the law of the forum state, including its choice of law rules, to determine the applicable substantive law."). For contract cases, New York courts have historically employed a "center of gravity" approach, identifying the jurisdiction with "the most significant interest in, or relationship to, the dispute." *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir. 1997). Specifically, when a disputed contract explicitly indicates a chosen law to govern, "[a]s a general matter, the parties' manifested intentions . . . are honored." *Turtur v. Rothschild Registry Intern., Inc.*, 26 F.3d 304 (2d Cir. 1994) (quoting *Freedman v. Chemical Constr. Corp.*, 43 N.Y. 2d 260 (NY App. Ct. 1977)). Indeed, "New York courts typically enforce a choice-of-law clause in a contract when the chosen law has a 'reasonable relationship' to the contract and does not violate New York public policy." *Chiste v. Hotels.com L.P.*, 756 F.Supp.2d 382, 408 (S.D.N.Y. 2010) (citing *LaGuardia Assocs. v. Holiday Hospitality Franchising, Inc.*, 92 F.Supp.2d 119, 127 (E.D.N.Y. 2000)).

Here, Section 13.8 of the Original Agreement originally contained a Georgia choice of law provision. *See* Exhibit B, FIS 0011.  However, this section was later amended to mandate application of New York law to the contract. *See id.*, FIS 0021. Additionally, Section 18.2 of the Latest Agreement contains an express choice of law provision providing for the application of New York law to the contract. *See* Exhibit C, FIS 0036. Therefore, given that the intent of the

parties was to have New York law govern both of the Agreements, coupled with the fact that the alleged economic loss was incurred by Maspeth in the State of New York, New York law should govern the breach of contract and indemnification claims.

### 2. Maspeth's Breach of Contract Claim is Barred Under the Agreements

Maspeth's breach of contract claim should be dismissed based on the explicit language of the Agreements. It is well settled that "the objective of contract interpretation is to give effect to the expressed intentions of the parties; the best evidence of what parties to a written agreement intend is what they say in their writing." *Law Debenture Trust Co. of NY v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010). Indeed, if and when a contract is written plainly and unambiguously, "that is, only susceptible to one reasonable interpretation, the court must give effect to the contract as written." *Madeleine L.L.C. v. Street*, 757 F.Supp.2d 403, 405 (S.D.N.Y. 2010). Courts must not interpret the terms of a contract in a way that renders its terms either "meaningless or superfluous." *See Manley v. AmBase Corp.*, 337 F.3d 237, 250 (2d Cir. 2003).

Specifically, a contract that contains a discharge from future liability or other limitation of liability language "will be upheld according to its terms unless it purports to immunize future conduct that is either intentionally tortious or grossly negligent, or unless it otherwise violates a strong, well articulated, and clear public policy." 8 Williston on Contracts § 19:21 (4th ed.) (2009). In determining whether an exculpatory clause is valid and enforceable, courts have looked to whether there was "free and knowing assent to the terms they contain," and whether the clause at issue "clearly, unambiguously, and unmistakably inform[s] the party relinquishing its rights of exactly what is being waived." *Id.* Indeed, a liability provision indicates the "parties' [a]greement on the allocation of the risk of economic loss in the event that the contemplated transaction is not fully executed, which the courts should honor." *Metropolitan Life Ins. Co. v. Noble Lowndes Int'l Inc.*, 84 N.Y 2d 430, 436 (N.Y. 1994). Although a party may later regret

ever agreeing to the contract's terms, "the courts let them *lie on the bed they made.*" 5 Corbin,

Corbin on Contracts, § 1068, at 386 (1964) (emphasis added).

### a.       Limitation of Liability Provisions

Maspeth's Amended Complaint references events before and after April 30, 2013 (the

effective date of the Latest Agreement).   The Court should therefore look to the relevant

provisions of both Agreements to assess Maspeth's breach of contract claim.

Section 8.6 of the Original Agreement sets forth limitations of liability:

> In no event shall Intercept be liable for any *special, indirect, incidental or*
> *consequential damages* resulting from the use, or inability to use, any
> products provided or licensed to [Maspeth] hereunder, for any *failure to*
> *provide services, for any error in the provision of products or services to*
> *customer under this agreement, or arising out of any other circumstances*
> *associated with the subject matter of this agreement*, including without
> limitation damages based on loss of profit, loss or interruption of data or
> computer time, or alteration or erroneous transmission of data, even if
> Intercept is advised in advance of the     possibility   of   such   damages.

 (emphasis added). *See* Exhibit B, FIS 0008-0009.

Similarly, Section 11.1 of the Latest Agreement states, in relevant part and in all capitalized text,

> FIS SHALL NOT BE LIABLE FOR ANY *INDIRECT, INCIDENTAL,*
> *CONSEQUENTIAL,  SPECIAL,  DELAY  OR  PUNITIVE  DAMAGES*
> WHATSOEVER (INCLUDING BUT NOT LIMITED TO, DAMAGES FOR
> LOSS   OF   BUSINESS   PROFITS   OR   REVENUE,   BUSINESS
> INTERRUPTION, LOSS OF INFORMATION, OR OTHER PECUNIARY
> LOSS), EVEN IF FIS WAS ADVISED OF THE POSSIBILITY OF SUCH
> DAMAGE.

 (emphasis added). *See* Exhibit C, FIS 0033.

Here, both of the Agreements contain unambiguous clauses expressly stating that FIS is

not liable for any indirect, consequential, special, delay or punitive damages resulting from any

failure to provide services.  Notably, in New York, only general and consequential damages may

be alleged in contract cases. *See PNC Bank, Nat. Ass'n v. Wolters Kluwer Financial Services,*

*Inc.*, 73 F.Supp.3d 358 (S.D.N.Y. 2014). General damages are defined as the "value of the very

performance promised." *See Schonfeld v. Hilliard*, 218 F.3d 164, 175 (2d Cir. 2000) (quoting 3 Dobbs, Dobbs Law of Remedies § 12.2(3) (1993)). Consequential damages, in contrast, "seek to compensate a plaintiff for additional losses (other than the value of the promised performance) that are incurred as a result of the defendant's breach." *PNC Bank*, F.Supp.3d at 370-71 (quoting *Schonfeld*, 218 F.3d at 175).

The facts in *PNC Bank* are strikingly similar to the case at bar. There, PNC sought to recover general damages for refunding payments to the bank's mortgagors as well as the legal and audit fees it incurred due to the defendant's alleged failure to provide necessary disclosures to the bank's mortgagors. *Id.* at 362-63. The explicit language of the parties' contract, like the Agreements here, barred special, indirect, consequential or punitive damages. *Id.* at 375. Thus, the defendant argued that PNC's damages were consequential and therefore precluded by the terms of the contract. *Id.* The court agreed, finding that PNC, on its own accord, decided to refund its customers and undertake an investigative audit and legal representation. *Id.* at 373-74. Because these damages were "one step removed from the naked performance promised by the defendant," the court found them to be consequential as opposed to general damages. *PNC Bank*, F.Supp.3d at 374; *see also Nat'l Investor Servs. Corp. v. Integrated Fund Servs., Inc.,* 85 Fed.Appx. 779, 781 (2d Cir. 2004) (holding that fee waivers paid to customers following contract breach were "not the natural result of the breach"); *Hallinan v. Republic Bank & Trust Co.*, 519 F.Supp.2d 340, 354-55 (S.D.N.Y. 2007) (categorizing legal fees and litigation costs as consequential damages).

Here, Maspeth, like PNC, seeks damages for the amount paid to the mortgagors and their attorneys under the Stipulation of Settlement as well as its own attorney's fees in addressing the third-party litigation. Maspeth claims that its damages are general as opposed to consequential.

*See* Maspeth's Response to FIS's Letter Requesting Pre-Motion Conference to File Motion to Dismiss [D.E. 12]. However, Maspeth's alleged damages, like those in *PNC Bank*, are in fact consequential, as they are several steps removed from the actual value of the services promised. General damages, if alleged by Maspeth, would instead be the amount of money in late fees that were incurred by Maspeth's mortgagors as a result of FIS's alleged breach of contract. Accordingly, Maspeth's claim for damages is barred by the explicit terms of the Agreements and should therefore be dismissed.

### b.    Liability Cap Provisions

Even if Maspeth's alleged damages were deemed to be general as opposed to consequential, thereby falling outside of the waiver of damages provisions in the Agreements, the liability caps in both Agreements limit, if not preclude, FIS's liability. Section 8.7 of the Original Agreement, provides,

> Intercept's total liability to [Maspeth] under *any provision of this agreement or any related agreement (whether based on tort, contract, or any other theory)*, other than claims based upon the gross negligence or willful misconduct of Intercept, shall be *limited to the amount actually paid by [Maspeth] for the product or service giving rise to the liability*. With respect to products and services for which [Maspeth] pays monthly or periodically, Intercept's liability shall be limited to the amount paid by [Maspeth] for such products or services in the 12 month period immediately preceding the fact or circumstance giving rise to such liability. All damages shall be reduced by any amount received by [Maspeth] under any insurance policy covering the event giving rise to the liability. *The parties acknowledge that each of them relied upon the inclusion of this limitation in consideration of entering into this Agreement*.

(emphasis added). *See* Exhibit B, FIS0009.

Additionally, Section 11.2 of the Latest Agreement, which references a Disclaimer of Liability for Certain Losses, states, in relevant part,

> In the event of any error by FIS in processing any Data or preparing any report or file hereunder, FIS's *sole obligation shall be to correct the error by reprocessing the affected Data or preparing and issuing a new file or report*

9

> *at no additional cost* to [Maspeth]; provided, however, FIS's obligation
> herein is *contingent upon [Maspeth] notifying FIS of the error within two (2)
> business days or two (2) processing cycles after [Maspeth] receives the
> improperly processed Data, report, or file.*

(emphasis added). *See* Exhibit C, FIS 0033.

As evidenced by the Original Agreement, FIS's total liability for services provided is

capped at the amount paid by Maspeth for the service or product giving rise to the liability. This

amount would be *significantly less* than the $857,130.95 Maspeth seeks in consequential

damages. Additionally, as per Section 11.2 of the Latest Agreement, FIS's only obligation for an

error in processing would be to correct the error at no additional cost to Maspeth, *but only if*

Maspeth notifies FIS of the error within the requisite time period. *See id.* Since Maspeth notified

FIS of the alleged errors after the allotted time frame, the terms of the Latest Agreement preclude

Maspeth from seeking *any* damages for FIS's alleged failure to process the data pertaining to

Remittances received after April 30, 2013.

Thus, even if the Court deems Maspeth's damages general as opposed to consequential,

FIS's liability is significantly limited, or even precluded, by the explicit terms of the Agreement.

### 3. Maspeth's Contractual Indemnification Claim Falls Outside of the Scope of the Agreements' Indemnification Provisions

Maspeth's contractual indemnification claim is precluded by the explicit terms in both of

the Agreements. Namely, Section 13.6 of the Original Agreement states,

> Subject to Section 8, Intercept and [Maspeth] shall indemnify and hold
> harmless the other Party against all claims, liabilities, losses, damages, and
> causes of action relating to (i) *personal injury or property damage* arising out
> [of] the intentional or negligent acts or omissions of the Party in the course of
> performance under this Agreement or any Related Agreement and (ii) the
> provision of intellectual property under this Agreement or any Related
> Agreement.

(emphasis added). *See* Exhibit B, FIS 0011.

Similarly, Section 10.2 of the Latest Agreement states, in relevant part,

10

> FIS shall defend [Maspeth] and its officers, employees, directors, agents and shareholders, in their individual capacities or otherwise, from and against any and all Claims (as defined in this Section 10.2) asserted by a third party (other than an Affiliate of [Maspeth]) against [Maspeth], and shall indemnify and hold harmless [Maspeth] from and against any damages, costs, and expenses of such third party awarded against [Maspeth] by a final court judgment or an agreement settling such Claims in accordance with this Section 10.2. As used in this Section 10.2, the term "Claim" means any action, litigation, or claim by a third party alleging (i) *personal injury or property damage* caused by FIS's gross negligence or willful misconduct in connection with this Agreement.

(emphasis added). *See* Exhibit C, FIS 0033.

New York courts have consistently held that "an indemnification agreement between sophisticated business entities will be construed as intending to indemnify either party for its own wrongdoing only when the language in the agreement clearly connotes an intent to provide for such indemnification." *Facilities Development Corp. v. Miletta*, 180 A.D.2d 97, 103 (3rd Dep't 1992). Here, the foregoing clauses explicitly set forth the scope of the indemnification. Specifically, FIS shall only indemnify Maspeth for claims alleging *personal injury* or *property damage*. Both Maspeth's Amended Complaint and the Class Action allege only economic losses. *See, e.g., Franklin St. Development Ltd. v. Bilow & Goldberg & Associates*, 1997 WL 795781, at *8 (S.D.N.Y. 1997) ("The economic losses claimed by Franklin Street do not fall within the scope of the contractual indemnification clause."); *Dormitory Authority of State of N.Y. v. Scott*, 160 A.D.2d 179 (1st Dep't 1990) (holding that pure economic losses alleged by plaintiffs fell outside of indemnification clause covering only bodily injury, death, or property damage). As such, Maspeth's claim falls outside of the applicable scope of the indemnification provisions and should therefore be dismissed.

### 4.  Maspeth's Common Law Indemnification Claim Fails Based on the Existence of the Valid, Enforceable Agreements

Just like its counterpart in law, Maspeth's common law indemnification claim should be dismissed. Common law indemnification is a "'quasi-contract' doctrine rooted in principles of equity and fairness conceptually related to restitution." *CSC Scientific Co., Inc. v. Manorcare Health Services, Inc.*, 867 F.Supp.2d 368, 377 (S.D.N.Y. 2011). In seeking common law indemnification, a party is essentially acknowledging that "the contract is a mere fiction; a form imposed to adapt the case to a given remedy … *there has been no agreement or expression of assent, by word or act, on the part of either party involved*." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382 (N.Y. 1987) (emphasis in original); *see also Blanchard v. Blanchard*, 201 N.Y. 134 (N.Y. 1911) ("[A] promise by implication does not exist where the parties have made the promise express."). Thus, a contract deemed both binding and enforceable "generally precludes recovery in quasi-contract for losses arising from the same subject matter." *CSC Scientific*, 867 F.Supp.2d at 377.

Here, Maspeth's common law indemnification claim fails because of the existence of the Agreements. Maspeth concedes the existence of valid, enforceable Agreements, as it seeks damages based on an alleged breach of contract as well as contractual indemnification. This necessarily implies the existence of a valid contract. Indeed, in its Amended Complaint, Maspeth acknowledges the existence of the Original Agreement, which dates back to 2003, and the Latest Agreement, which dates back to 2013. Maspeth cannot bypass the unambiguous terms of the Agreements, which bar a remedy at law, in an attempt to be remedied in equity. Therefore, its common law indemnification claim should be dismissed.

**B.**   **Maspeth's Gross Negligence Claim Fails as a Matter of Law.**

**1.**   **Choice of Law Analysis**

Tort claims fall outside of contractual choice of law provisions. *See Burns v. Delaware Charter Guarantee & Trust Co.,* 805 F.Supp.2d 12, 22 (S.D.N.Y. 2011). Therefore, federal courts exercising diversity jurisdiction in New York apply an interest analysis approach to tort claims, whereby the law of the jurisdiction with the most interest in the case will govern. *Id.* at 22-23. Two separate inquiries are conducted, though only the first, an assessment as to the jurisdiction with the most significant contacts and the location where the alleged tort took place, is relevant here. *See Grund v. Delaware Charter Guarantee & Trust Co.*, 788 F.Supp.2d 226 (S.D.N.Y. 2011) ("[T]he locus of the tort tends to be where the alleged victims resided, as that is the locus of their economic loss.").

Here, Maspeth's alleged economic loss occurred in New York, as Maspeth is headquartered in New York with five branch offices located throughout Queens and Nassau counties. Therefore, New York law should govern the gross negligence claim.

**2.**   **Maspeth Fails to Plead Sufficient Facts Alleging a Cause of Action for Gross Negligence**

Though Maspeth has asserted a claim for gross negligence, its bare and unsubstantiated allegation that FIS acted with "willful disregard" does not suffice to transform a potential negligence claim into one for gross negligence. Gross negligence "differs in kind, not only degree, from claims of ordinary negligence." *Colnaghi, USA, Ltd. v. Jewelers Protection Services, Ltd.*, 81 N.Y.2d 821, 823 (N.Y. 1993); *see also Lane v. Fein, Such and Crane, LLP,* 767 F.Supp.2d 382 (E.D.N.Y. 2011) ("[E]ven assuming that the plaintiffs had alleged facts sufficient to state a cause of action for negligence, none of the acts alleged rises to the level of satisfying this additional [gross negligence] element."). In order to state a successful gross

negligence claim, a party must provide "factual allegations of conduct evincing a reckless disregard for the rights of others or smacking of intentional wrongdoing . . ." *Mancuso v. Rubin*, 52 A.D.3d 580, 583 (2d Dep't 2008).

Even in cases where parties were found to have willfully breached a contract in an effort to benefit economically, New York courts have refused to find gross negligence, absent malicious intent. *Metropolitan Life Ins. Co.*, 84 N.Y 2d at 435. For a claim of gross negligence, one must demonstrate that the party's conduct was "fraudulent, malicious or prompted by the sinister intention of one acting in bad faith." *Net2Globe Int'l Inc. v. Time Warner Telecom of N.Y.*, 273 F.Supp.2d 436, 450 (S.D.N.Y. 2013); *see also Indus. Risk Insurers v. Port Auth. of N.Y. & N.J., et al.,* 387 F.Supp.2d 299, 307 (S.D.N.Y. 2005) ("Ordinary mistakes or miscalculations in performing a task will not meet this [gross negligence] standard.").

Here, Maspeth's conclusory allegations that FIS acted with "willful disregard" falls far short of meeting the standard required to adequately plead a gross negligence claim. Notably, the Agreements contain explicit language significantly limiting FIS's liability for claims other than gross negligence or willful misconduct, which may explain why Maspeth seeks to take a garden variety negligence claim and style it as a claim for gross negligence. As such, Maspeth's gross negligence claim should be dismissed.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, the Amended Complaint should be dismissed in its entirety,

with prejudice.

Dated:  New York, New York
       January 15, 2016

                              Respectfully submitted,

                              **Fox Rothschild LLP**

                              <u>/s/ John A. Wait</u>
                              John A. Wait, Esq.
                              FOX ROTHSCHILD LLP
                              100 Park Avenue, 15th Floor
                              New York, NY 10017
                              Tel: (212) 878-7900
                              Fax: (212) 692-0940
                              jwait@foxrothschild.com
                              *Attorneys for Defendant Fidelity*
                              *Information Services, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 15, 2016 a copy of the foregoing document was served on opposing counsel via e-mail. As per the Court's instruction at the December 14, 2015 pre-motion conference, I will electronically file all of the papers related to this Motion to Dismiss on March 18, 2016.


<u>/s/ John A. Wait</u>
John A. Wait, Esq.