UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------X

MASPETH FEDERAL SAVINGS
AND LOAN ASSOCIATION,                                    Case No: 1:15-cv-06006-WKF-CLP

                              Plaintiff,

             -against-


FIDELITY INFORMATION SERVICES,
LLC

                           Defendant
---------------------------------------------------X


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Mark L. Cortegiano, Esq.
65-12 69th Place
Middle Village, NY 11379
718-894-9500
Attorney for Plaintiff,
Maspeth Federal Savings and Loan
Association

On the Memorandum:
Diana J. Demirdjan, Esq.

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ......................................................................... ii

**I.   PRELIMINARY STATEMENT** ...........................................................1

**II.  STATEMENT OF FACTS** ................................................................3

**III. LEGAL STANDARD** ......................................................................5

**IV. LEGAL ARGUMENTS** ...................................................................6

      **A.**    **Maspeth's Amended Complaint States a Valid Cause of Action for Breach of Contract and As Such It Should Not  Be Dismissed** ........................6

        **1. The Agreements Do Not Bar Maspeth's Recovery for FIS's Breach of Contract** ...............................................................7

        **a. Even  if the Limitation of Liability Provisions  in the Agreements Are Enforceable They Are Not a Bar  to Recovery Under a Breach of Contract Claim as Maspeth's Damages Fall Outside the Scope of the Limitation** ...............................................................7

          **i.  The Returned Late Fees Constitute General Damages as They are the Natural and Probable Consequence of FIS's Breach of the Agreement** ...................................7

          **ii.  Payment of Attorney's Fees Constitutes General Damages As It Was  the Natural and Probable Consequence of FIS's Breach of the Agreements** ...................................9

          **iii. The Cases Cited by FIS In Support of The Motion to Dismiss Maspeth's Breach of Contract Claims Are Inapposite to the Instant Action** ...................................10

        **b. Any Language in the Agreements Which May Cap FIS's Liability Is Not a Bar to a Breach of Contract Claim** ...................................13

      **B.**    **Maspeth Contractual Indemnification Cause of Action Falls Squarely Within The Scope Of  The Agreements' Indemnification Provisions And as Such  Should Not Be Dismissed** ..................................................13

      **C.**    **Maspeth Has Sufficiently Pled A Cause of Action for Gross Negligence And as Such Its Claim Should Not Be Dismissed** .................................15

**V.  CONCLUSION** ...........................................................................19

i

## <u>TABLE OF AUTHORITIES</u>

**Pages**

**Cases**

*Aero Garage Corp. v. Hirschfeld*,
    185 A.D.2d 775 (1st Dep't 1992) ........................................................................10

*Am. Elec. Power Co. v. Westinghouse Elec. Corp.*, 418 F. Supp. 435, 459 (S.D.N.Y.
    1976) ........................................................................................................................12

*Baidu, Inc. v. Register.Com, Inc.*,
    760 F. Supp. 2d 312 (S.D.N.Y 2010).....................................................................16

*Biotronik A.G. v. Conor Medsystems Ireland, Ltd.*,
    22 N.Y.3d 799 (2014) ..............................................................................................7

*Clark St. Wine & Spirits v. Emporos Sys. Corp.*,
    754 F. Supp. 2d 474 (E.D.N.Y. 2010) ...............................................................6, 16

*Frasier v. General Electric Co.*,
    930 F.2d 1004 (2d Cir. 1991).....................................................................................5

*Net2Globe Int'l, Inc. v. Time Warner Telecom of New York*,
    273 F. Supp. 2d 436 (S.D.N.Y. 2003),...................................................................18

*PNC Bank, Nat. Ass'n v. Wolters Kluwer Fin. Servs., Inc.*,
    73 F. Supp. 3d 358 (S.D.N.Y. 2014)...................................................10 , 11, 12

*Sommer v. Fed. Signal Corp.*,
    79 N.Y.2d 540 (N.Y. 1992) ...............................................................................16, 18

*Stewart v. Jackson & Nash*,
    976 F.2d 86 (2d Cir. 1992).........................................................................................6

*Travelers Indem. Co. of Conn. v. Losco Grp., Inc.*,
    136 F. Supp. 2d 253 (S.D.N.Y. 2001).........................................................5,16, 19

**Statutes**

New York General Business Law § 349 ......................................................................2,9

12 U.S.C. § 2605................................................................................................................2,9

Fed. R. Civ. P 12(b)(6).......................................................................................................2

## I.   PRELIMINARY STATEMENT

Plaintiff, Maspeth Federal Savings and Loan Association ("Maspeth"), by and through its attorney, Mark L. Cortegiano, Esq., respectfully submits this memorandum of law in opposition to defendant, Fidelity Information Services, LLC's ("FIS") motion to dismiss Maspeth's amended complaint for failure to state a claim upon which relief can be granted.  (A copy of Maspeth's First Amended Complaint is attached hereto as Exhibit "A").

Maspeth was sued in a class action lawsuit[1] brought by and on behalf of mortgagors who were improperly assessed late fees when FIS failed to timely process and credit those mortgagors' payments to their mortgage accounts (the "Class Action Lawsuit").  At all times relevant to the Class Action Lawsuit, FIS was the entity exclusively responsible for collecting, processing and crediting the mortgagors' payments from Maspeth's post office lockbox. Maspeth believed that any late charges assessed to its mortgagors were correct until Maspeth conducted an investigation of FIS's practices in the course of the Class Action Lawsuit.  The investigation revealed that, in numerous instances, FIS had failed to properly credit mortgage payments timely received at the lockbox, resulting in improper late charges against Maspeth's mortgagors' accounts.  Accordingly, Maspeth agreed to return late fees of up to $219,471.04 to its mortgagors, and paid both plaintiff's and its own attorney's fees, totaling over $835,000.00, to defend and settle the Class Action Lawsuit.  (A copy of the Settlement Agreement to the Class Action Lawsuit, with the relevant Exhibit "C" thereto, is annexed hereto as Exhibit "C").

As is discussed in greater detail throughout this memorandum (and set forth in Maspeth's amended complaint), FIS had total control of every step of servicing Maspeth's post office

---

[1] The Class Action Lawsuit is titled *Samuel Friedman, Individually and on Behalf of All Others Similarly Situated v. Maspeth Federal Savings& Loan Association*, 13-CV-06295-JBW-SMG.  (A copy of the Amended Complaint in the Class Action Lawsuit is annexed hereto as Exhibit B).

lockbox where mortgage payments were received – from collecting and opening the mail, to sorting and reviewing the contents of the mail, to entering and uploading the payments from the mail and reporting the payments to Maspeth.  FIS's services to Maspeth were governed by two written contracts that covered the time period at issue in the Class Action Lawsuit.  (See Exhibits "D" and "E").   In performing these services, FIS owed a duty to Maspeth's mortgagors, independent of any contractual obligation to Maspeth, to properly process and credit the mortgagors' payments which were timely received at the lockbox.  Instead, FIS both breached its contractual obligation to Maspeth and was grossly negligent in its duties to the mortgagors when month after month FIS intentionally processed mortgagors' payments as late when FIS knew that the payments had been timely received in the lockbox.  FIS's actions resulted in the Class Action Lawsuit, which sought not only the return of the improper late fees from Maspeth, but damages for personal injury and emotional distress under New York General Business Law § 349 and declaratory relief.  (See Exhibit "B").

Twice during the course of the Class Action Lawsuit, Maspeth demanded indemnification from FIS.  (See Exhibits "F" and "G").  FIS refused those demands and failed to acknowledge its improper actions.  (*Id*.)  Maspeth was left to resolve the Class Action Lawsuit on its own and, in defending the Class Action Lawsuit, incurred over $300,000.00 in legal fees.  Maspeth ultimately settled the case by returning $22,130.95 in late fees to mortgagors and paying $535,000.00 in legal fees to the class action plaintiff's counsel.  The legal fees paid to the class action plaintiff's counsel were recoverable under two of the causes of action in the Class Action Lawsuit – the New York General Business Law § 349 claim and the Real Estate Settlement Procedures Act claim (12 U.S.C. § 2605, *et seq.*).  (See Exhibit "B" at ¶¶ 50, 62).  The instant

case seeks reimbursement by Maspeth from FIS for all amounts which Maspeth paid to settle and defend the Class Action Lawsuit.

FIS's actions constitute a breach of the agreements between FIS and Maspeth. Furthermore, as the exclusive servicer of Maspeth's lockbox for mortgage remittances, FIS's knowing failure to timely credit the mortgagors' accounts constitutes a breach of the duty of care that FIS owed to Maspeth and its mortgagors which rises to the level of gross negligence. Ultimately, FIS' grossly negligent conduct resulted in Maspeth incurring over $857,130.95 in damages. The damages to Maspeth resulting from FIS's actions are recoverable as "general damages" under the indemnification provisions of the Agreements because the damages, including the legal fees paid to settle and defend the Class Action Lawsuit, are the natural and probable consequence of FIS's breach of contract and gross negligence.

Maspeth has sufficiently pled and should be permitted to pursue claims for (1) Breach of Contract, (2) Gross Negligence, and (3) Contractual Indemnification. Defendant's motion to dismiss those claims pursuant to Fed. R. Civ. P 12(b)(6), therefore, should be denied as a matter of law.[2]

## II.   **STATEMENT OF FACTS**

On or about January 22, 2003, Maspeth and FIS (initially through Intercept, Inc.) entered into an agreement which contained a "Lockbox Services Order" whereby FIS was to provide Maspeth with various banking, remittance, processing and lockbox technologies and services (the "2003 Agreement"). (A copy of the 2003 Agreement is annexed hereto as Exhibit "D"). Subsequently, on or about April 30, 2013, the parties entered into another agreement which contained both a Lockbox Services Addendum as well as a Core Processing Services Addendum

---

[2] Pursuant to the annexed Declaration of Mark L. Cortegiano at ¶10, Maspeth withdraws its claim for common law indemnification.

whereby FIS was to continue to provide the same services to Maspeth (the "2013 Agreement"). (A copy of the 2013 agreement is annexed hereto as Exhibit "E").  The 2003 Agreement and the 2013 Agreement are collectively referred to herein as the "Agreements."

Pursuant to the Agreements, FIS was obligated to maintain and service a United States Postal Service box (the "Lockbox") to which Maspeth's mortgagors could make their mortgage payments.  FIS was to also provide the "core processing services" (the "Core System") of Maspeth's mortgage servicing operations, whereby FIS would credit Lockbox remittances (the "Remittances") to the mortgage accounts (See Exhibit "A" at ¶18). FIS was to collect, review, process and credit payments made by the mortgagors on the dates that payments were received at the Lockbox, without any further action by Maspeth (See Exhibit "A" at ¶18).

During the relevant Agreement periods, Maspeth maintained a policy with its mortgagors that any Remittances received by Maspeth by 8:00 p.m. on the 16th day of the month when due would not incur a late charge (the "Late Fee Policy") (See Exhibit "A" at ¶17).  FIS provided the Core System to Maspeth and programmed it to control all of Maspeth's banking systems in accordance with Maspeth's policies, including Maspeth's Late Fee Policy (See Exhibit "A" at ¶19).  To do so, FIS knew or should have known Maspeth's Late Fee Policy at the time it provided, programmed and maintained the Core System (See Exhibit "A" at ¶19).

FIS was in exclusive control of collecting, processing and crediting all mortgage payments received at the Lockbox.  Because of the post office hours, FIS had to pick up the remittances on every business day by 5:00 p.m.  In practice, Maspeth's investigation during the course of the Class Action Lawsuit revealed that the daily pick up from the Lockbox took place each day by noon.  Despite knowing that Maspeth's Late Fee Policy allowed payments to be received up until 8:00 pm on their due date (the 16th), FIS failed to account for those payments

4

that were received after its daily pick up but before 8:00 pm.  FIS's failure to process and enter those payments until at least the next business day showed a reckless disregard for Maspeth and its mortgagor's rights to have their payments timely credited.

FIS's knowing failure to timely credit remittances in accordance with Maspeth's Late Fee Policy resulted in Maspeth's mortgagors being assessed improper late fees.  Maspeth believed that the late charges assessed to its mortgagors were proper and did not become aware of FIS's failure to properly credit its mortgagor's accounts until after the Class Action Lawsuit was brought against it.  The Class Action Lawsuit prompted an investigation into FIS's practices, which revealed that FIS had failed to timely credit the mortgagors' accounts.

FIS's actions, or inactions, were the subject of the Class Action Lawsuit brought against Maspeth.  As part of the stipulation to settle the Class Action Lawsuit, Maspeth paid $22,130.95 to qualified claimants as well as $535,000.00 to the class action plaintiff's attorneys' fees. Further, Maspeth incurred at least an additional $300,000.00 in its own legal fees to defend the Class Action Lawsuit.  Maspeth filed the instant action against FIS seeking reimbursement of the foregoing amounts as damages for breach of contract, gross negligence and contractual  indemnity - all arising from FIS's failure to timely and properly service the Lockbox.

## III.  <u>LEGAL STANDARD</u>

The standard of review on a motion to dismiss is heavily weighted in favor of the plaintiff. *Travelers Indem. Co. of Conn. v. Losco Grp., Inc.*, 136 F. Supp. 2d 253, 255 (S.D.N.Y. 2001).  The Court is required to read a complaint generously, drawing all reasonable inferences from the complaint's allegations.  *Id.*  In ruling on a motion to dismiss for failure to state a claim upon which relief may be granted, the court is required to accept the material facts alleged in the complaint as true.  *Frasier v. General Electric Co.*, 930 F.2d 1004, 1007 (2d Cir. 1991).  The

task of the court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof. *Clark St. Wine & Spirits v. Emporos Sys.Corp.*, 754 F. Supp. 2d 474, 479 (E.D.N.Y. 2010).

The issue is not whether a plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims. *Id.* The Court must deny the motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Stewart v. Jackson & Nash*, 976 F.2d 86, 87 (2d Cir. 1992).

## IV.   LEGAL ARGUMENTS

### A.  Maspeth's Amended Complaint States a Valid Cause of Action for Breach of Contract and As Such It Should Not Be Dismissed

Maspeth states a valid cause of action for breach of contract as its amended complaint sets forth all of the necessary elements of a breach of contract claim. Pursuant to the Agreements, FIS was obligated to provide certain services for Maspeth including timely collecting, reviewing, processing and crediting payments made by Maspeth's mortgagors. FIS does not deny that it breached this duty to Maspeth, or that Maspeth suffered damages as a direct result of that breach. Rather, FIS claims, incorrectly, that the limitation of liability language contained in the Agreements is a bar to Maspeth's recovery on a breach of contract claim and thus is a basis for dismissal of the claim.

FIS's assertion is simply incorrect. Even assuming that the limitation of liability provisions in the Agreements are enforceable, Maspeth's damages fall outside of the scope of the limitation of liability provisions. The damages sought by Maspeth are considered general damages, and recovery of general damages is not precluded by the Agreements. Further, FIS's argument that the cap on damages contained in the Agreements bars Maspeth's recovery

similarly fails.   A cap on liability does not bar Maspeth's recovery; it, at best, limits it. Accordingly, FIS's motion to dismiss Maspeth's breach of contract claim should be denied.

1.   **The Agreements Do Not Bar Maspeth's Recovery for FIS's Breach of Contract**

   a. **Even if the Limitation of Liability Provisions in the Agreements Are Enforceable, They Are Not a Bar to Recovery Under a Breach of Contract Claim as Maspeth's Damages Fall Outside the Scope of the Limitation**

Even assuming that the Agreements contain enforceable limitation of liability provisions, that is not a basis to grant FIS's motion to dismiss.   FIS concedes that the limitation of liability language does not limit *any and all* recovery of damages in a breach of contract claim, but rather, that it limits Maspeth's recovery to *general* damages arising out of FIS's breach of the contract. Thus, Maspeth is entitled to recover general damages incurred as a result of FIS's breach of the Agreements.

New York Courts have defined general damages as damages which "are the natural and probable consequence of the breach" of a contract.   *Biotronik A.G. v. Conor Medsystems Ireland, Ltd.*, 22 N.Y.3d 799, 805, 11 N.E.3d 676 (2014).

Maspeth's amended complaint seeks recovery for three categories of damages incurred through the Class Action Lawsuit: (1) late fees Maspeth reimbursed to members of the plaintiff class; (2) attorney's fees paid to plaintiff's class action counsel; and (3) attorney's fees paid to Maspeth's counsel in defending the Class Action Lawsuit.   All three of these categories of damages fall within the ambit of "general damages" as defined by the courts because they are the the natural and probable consequence of FIS's breach of the Agreements.   *Id.*

   i. **The Returned Late Fees Constitute General Damages as They are the Natural and Probable Consequence of FIS's Breach of the Agreements**

The natural consequence of a service provider failing to credit mortgage payments before the late fee deadline is that the affected mortgagors will be charged improper late fees.   As the

most obvious and natural result of untimely crediting of payments, it is axiomatic that the return of late fees constitutes general damages.  Thus, clearly, the first category of damages claimed by Maspeth - the returned late fees to the members of the Class Action Lawsuit - constitute general damages.  The refund of late fees to the mortgagors was necessitated by FIS's breach of the duty it had under the Agreements to timely credit the mortgagors' accounts.  Accordingly, this category of damages must be considered general damages as it is by definition the "natural and probable" consequence of FIS's breach of the Agreements.

Specifically, the 2013 Agreement states in relevant part:

> 2.1 FIS will collect the contents of the Lockbox each business day. FIS will open the envelopes containing checks, money orders, cash or other forms of payment….
> (See Exhibit "E" at FIS 0095).

The 2013 Agreement further states:

> 3.1 FIS shall follow procedures and time schedules it deems appropriate to timely process [Maspeth's] Data and post entries.  [Maspeth] authorizes FIS to create, process and post entries on its behalf, including adjustments and corrections, in order to timely process Data.
> (See Exhibit "E" at FIS 0038).

FIS's duties under the Agreements were to timely, collect, process and credit the mortgagors' payments, and it was FIS's breach of these duties which were the subject of the Class Action Lawsuit wherein members of the class sought the return of improperly charged late fees.  Thus, the return of late fees is a natural and probable consequence of FIS's breach of the Agreements.

Indeed, FIS itself recognizes that the return of late fees is a category of general damages which falls outside the scope of the limitations provisions.  FIS's motion papers state, "General damages, if alleged by Maspeth, would instead be the amount of money in late fees that were

incurred by Maspeth's mortgagors."   (See FIS's Motion to Dismiss Plaintiff's Amended Complaint at page 9).   Thus, there is no dispute that the first category of damages claimed by Maspeth is considered general damages and is recoverable under the Agreements.

### ii.   Payment of Attorney's Fees Constitutes General Damages as It Was  the Natural and Probable Consequence of FIS's Breach of the Agreements

The payment of plaintiff's attorney's fees in the Class Action Lawsuit and the attorney's fees incurred by Maspeth to defend the Class Action Lawsuit also constitute general damages as the natural and probable consequence of FIS's breach of the Agreements.   FIS's failure to properly credit the mortgage payments timely received at the Lockbox (and the resulting late fees charged to mortgagors) resulted in violations of RESPA, as alleged in the Class Action Lawsuit. (See Exhibit "B" at ¶¶ 44-50).   Because FIS had sole control of each and every aspect of the collection, processing and payment process, Maspeth had *no* knowledge that the late fees charged to the mortgagors were improper.   Thus, when the class action plaintiff questioned the late charges on his mortgage account, Maspeth looked at its records – the records generated *by* FIS – as to when his payments were received.   Those records were wrong solely because FIS improperly serviced the Lockbox and improperly charged late fees.

The ensuing dispute between Maspeth and the class action plaintiff, embodied in the Class Action Lawsuit, entitled the class action plaintiff's counsel to legal fees from Maspeth pursuant to New York General Business Law § 349(h)  and  RESPA, 12 U.S.C. § 2605(f)(3). The $535,000.00 which Maspeth paid to the plaintiff's counsel in settling the Class Action Lawsuit flowed directly from FIS's breach of the Agreements just the same as the return of the late fees to the mortgagors flowed directly from FIS's breach of the Agreements.   Thus, the payment of legal fees as part of the settlement of the Class Action Lawsuit is a natural and probable consequence of FIS's breach of the Agreements and constitutes general damages.

Furthermore, courts have held that when a party has incurred legal fees as a result of fulfilling a defendant's obligations under a contract, as is the case here, recovery of legal fees are considered general damages. *See Aero Garage Corp. v. Hirschfeld*, 185 A.D.2d 775, 776, 586 N.Y.S.2d 611 (1st Dep't 1992) (holding that the attorney's fees would be awarded as direct damages when legal expenses were incurred by plaintiff in attempting by itself to fulfill defendants' obligations under the contract and were "directly occasioned and made necessary by" defendants' breach).

In the instant matter, as in *Aero*, it was FIS's breach of the Agreements which necessitated both the payment of legal fees to the class action plaintiff *as well as* Maspeth's incurring its own legal fees in defending the class action. Maspeth did not know of, and did not discover, FIS's mistakes until Maspeth conducted an investigation in the course of the Class Action Lawsuit. Accordingly, Maspeth's second and third category of damages are recoverable as general damages since they are the "natural and probable" consequence of FIS's breach of the Agreements and thus fall outside the scope of the limitations provisions in the Agreements.

All three of the categories of damages sought by Maspeth are general damages which fall outside the scope of the limitations provisions of the Agreements. The limitations provisions do not bar Maspeth's recovery in this action. Therefore, FIS's motion to dismiss Maspeth's breach of contract claim based on the limitations provisions must be denied.

### iii.   The Cases Cited by FIS In Support of the Motion to Dismiss Maspeth's Breach of Contract Claims Are Inapposite to the Instant Action

FIS's heavy reliance on *PNC Bank, Nat. Ass'n v. Wolters Kluwer Fin. Servs., Inc.*, 73 F. Supp. 3d 358, 364 (S.D.N.Y. 2014) in support of its proposition that the damages sought by Maspeth are barred under the limitation of liability provision in the Agreements, is misplaced.

In *PNC*, the plaintiff bank sought recovery against the defendant software company for monies it spent to audit disclosure procedures and reimburse its mortgagors for settlement costs when it was discovered that the mortgagors received late disclosure statements.  However, that case is inapposite to the instant action.

As an initial matter, discovery in *PNC* had revealed that 1) the plaintiff voluntarily performed an audit and voluntarily returned moneys to its clients in a seeming gesture of good faith, even though a) it was neither required to do so by any regulatory agency, nor b) requested to do so by any of its customers; and 2) no bank had refunded settlement costs when faced with a similar situation.  In the instant case, Maspeth did not voluntarily take it upon itself to return late fees, rather, a mortgagor filed the Class Action Lawsuit which Maspeth was required to defend.

Indeed, Maspeth defended the Class Action Lawsuit because Maspeth believed that late fees had been properly charged by FIS.  FIS had sole control of each and every aspect of the collection, processing and payment process.  Therefore, while FIS knew or should have known of the improper late fees, Maspeth had *no* knowledge that the late fees charged to the mortgagors were improper until after an investigation was conducted in the course of the Class Action Lawsuit.  Only during that investigation when FIS provided documents and explained its process to Maspeth did FIS first reveal its flawed procedures.  Once Maspeth learned of FIS's previously undisclosed improper process and late charges, Maspeth settled the Class Action Lawsuit, returning the late fees to its mortgagors, as well as agreeing to pay the class action plaintiff's legal fees.

Additionally, the plaintiff in *PNC* had not involved the defendant software company in the decision making process when deciding to voluntarily return the monies to its clients.  On the

contrary, in the instant case Maspeth made numerous attempts to request indemnification from FIS and involve FIS in both the litigation and the settlement process, but FIS refused to take part. (Copies of Maspeth's Notice of Claim and Demand for Indemnification to FIS, dated December 6, 2013 and FIS's response dated December 20, 2013 are attached hereto as Exhibit "F"; Copies of Maspeth's Demand for Indemnification to FIS dated October 3, 2014 and FIS's response dated October 22, 2014 are attached hereto as Exhibit "G").

Most importantly, *PNC* involved a motion for summary judgment which was brought and decided after the benefit of full discovery had been conducted in the action.  The court itself noted that "the precise demarcation between direct and consequential damages is a question of fact" but found that since discovery had been completed, it could make the decision as a matter of law.  In the instant case, no discovery has been conducted at all.  Accordingly, this Court should not make a decision as a matter of law on the issue of whether Maspeth's damages are general without the benefit of any discovery.

Indeed, New York Courts have consistently held that whether damages are direct or consequential is a question of fact that should not be determined on a motion to dismiss.  *Am. Elec. Power Co. v. Westinghouse Elec. Corp.*, 418 F. Supp. 435, 459 (S.D.N.Y. 1976) (holding that the precise demarcation between direct and consequential damages is a question of fact, and the commercial context in which a contract is made is of substantial importance in determining whether particular items of damages will fall into one category or the other).  The precise scope of direct damages must be left for resolution at trial.  *Id.*  As discovery has not yet been conducted in this case, FIS's motion is, at best, premature, and therefore must be denied.

**b. Any Language in the Agreements Which May Cap FIS's Liability Is Not a Bar to a Breach of Contract Claim**

Maspeth has stated a valid cause of action for breach of contract notwithstanding any potential cap on its recovery, and thus its claim for breach of contract should not be dismissed. FIS's attempt to convince this court that a cap on liability precludes any recovery by Maspeth is flawed. A limitation on liability, including a cap on damages, does not result in a bar to recovery in a breach of contract claim. Rather it works, at best, to limit recovery.

The majority of the improper late fees at issue were assessed against Maspeth's mortgagors from November of 2007 through July of 2013. As such, said late fees fall under the scope of the 2003 Agreement. Pursuant to Section 8.7 of the 2003 Agreement:

> Intercept's total liability to [Maspeth] under any provision of this agreement or any related agreement (whether based on tort, contractor any other theory), other than claims based upon the gross negligence or willfully misconduct of Intercept, shall be limited to the amount actually paid by [Maspeth] for the product or service giving rise to the liability.

At best, FIS's claim that damages are capped to the amount paid for FIS's service does nothing more than speak to the amount of damages that are recoverable. A cap on damages does not amount to failure to state a cause of action for breach of contract. Maspeth has sufficiently pled a cause of action for breach of contract and thus its cause of action should be sustained, and Maspeth should be entitled to conduct discovery in order to determine the full extent of damages to which it is entitled.

**B. Maspeth's Contractual Indemnification Cause of Action Falls Squarely Within The Scope Of The Agreements' Indemnification Provisions And as Such Should Not Be Dismissed**

Maspeth's contractual indemnification claim falls within the scope of the parties' indemnification agreement and thus cannot be dismissed because it seeks indemnification for

claims relating to personal injuries caused by FIS.  Namely, Section 13.6 of the 2003 Agreement

states:

> Subject to Section 8, Intercept and [Maspeth]   shall
> indemnify and hold harmless the other Party against all
> claims, liabilities, losses, damages    and causes of action
> relating to (1) personal injury or property    damage
> arising out of the intentional or negligent acts or omissions
> of the Party in the court of performance under this
> Agreement.
> (See Exhibit "D" at page 0008-0009).

Similarly, Section 10.2 of the 2013 Agreement states, in relevant part:

> FIS shall defend [Maspeth] and its officers, employees,
> directors, agents, and shareholders, in their  individual
> capacities or otherwise, from and against any and all
> Claims (as defined in Section 10.2) asserted by a third party
> (other than an affiliate of  [Maspeth]) against [Maspeth],
> and shall indemnify and hold harmless [Maspeth] from and
> against any damages, costs, and expenses of such third
> party awarded against [Maspeth] by a final court judgment
> or an agreement settling such Claims in accordance
> with this Section 10.2. As used in this Section 10.2 the term
> "Claim" means any action, litigation, or claim by a third
> party alleging (1) personal    injury or property  damage
> caused by FIS' gross negligence or willful misconduct in
> connection with this Agreement.
> (See Exhibit "E" at page 0033).

Maspeth is seeking indemnification for the settlement in the Class Action Lawsuit

wherein the plaintiff class sued Maspeth for, *inter alia,* personal injuries resulting from the

imposition of late charges.  Specifically, the plaintiff class alleged:

> In addition to pecuniary losses, Plaintiff and the Class
> suffered actual harm as a result of Maspeth's [improper
> imposition of late fees], including but limited to, the
> annoyance, harassment, time, frustration, anger and anxiety
> incurred by Plaintiff and the Class due to [improper
> imposition of late fees].
> (See Exhibit "B" at paragraph 60).

14

The instant indemnification claim seeks indemnification for a claim involving personal injury, specifically, "harassment, time, frustration, anger and anxiety." *See Id.* FIS's assertion to the contrary, specifically, that Maspeth is seeking indemnification for claims involving only economic losses rather than "personal injury or property damage," is incorrect.

The cases which FIS cites in support of its motion to dismiss Maspeth's contractual indemnification claim are inapposite to the case at bar because those cases involve situations where the underlying actions for which the plaintiff seeks indemnification are claims solely for economic losses arising out of breach of contract or negligence claims, not claims that include personal injury. In the instant action, Maspeth seeks indemnification for defending the Class Action Lawsuit which included claims for personal injury (See Exhibit "B" at paragraph 60). Accordingly, the losses claimed by the plaintiff class in the Class Action Lawsuit, for which Maspeth now seeks indemnification, fall squarely within the scope of the contractual indemnification clause of the Agreements, and FIS is obligated to indemnify Maspeth for its defense of the Class Action.

### C. Maspeth Has Sufficiently Pled A Cause of Action for Gross Negligence and As Such Its Claim Should Not Be Dismissed

Maspeth has stated a cause of action for Gross Negligence as it has pled allegations that allege that FIS showed a willful disregard for the duty it owed to Maspeth and its mortgagors. (See Exhibit "A" at ¶¶ 50-66). Accordingly, there is no basis to dismiss Maspeth's cause of action for gross negligence and FIS's motion should be denied.

It is black letter law in New York that:

> An exculpatory agreement, no matter how flat and unqualified its terms, will not exonerate a party from liability under all circumstances. Under announced public policy, it will not apply to exemption of willful or grossly negligent acts. More pointedly, an exculpatory clause is

> unenforceable when … the misconduct for which it would
> grant immunity … betokens a reckless indifference to the
> rights of others.
> *Baidu, Inc. v. Register.Com, Inc.*, 760 F. Supp. 2d 312, 318
> (S.D.N.Y 2010) (Internal citations omitted).

"To state a claim for gross negligence, [plaintiff] must allege that [defendant] breached a duty owed to [plaintiff] that proximately caused [plaintiff's] damages, and that the act or omission [is] of an aggravated character." *Clark Street Wine and Spirits v. Emporos Systems Corporation*, 754 F. Supp. 2d 474, 481 (E.D.N.Y 2010) (Internal citations omitted). Determining whether acts or omissions constitute gross negligence is reserved to the jury. *Id*. Indeed whether a defendant's failure to perform the duties owed to plaintiff rises to the level of reckless disregard for the rights of others is a question properly reserved for a jury and cannot be decided on a motion to dismiss. *See Travelers Indem. Co. of Conn. v. Losco Grp., Inc.*, 136 F. Supp. 2d 253, 255 (S.D.N.Y. 2001) (holding that the issue of gross negligence is a question of fact for the jury to determine and that plaintiff's claims for gross negligence cannot be fully established until discovery is completed); *See also Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 593 N.E.2d 1365 (N.Y. 1992).

In the instant matter, Maspeth has alleged, and FIS does not deny, that FIS owed a duty to Maspeth and its mortgagors to timely, collect, process and credit the mortgagor's payments which were received at the Lockbox (See Exhibit "A" at ¶¶ 18-20). Similarly, Maspeth has alleged, and FIS does not deny, that FIS breached that duty when it failed to timely credit the mortgagors in accordance with Maspeth's Late Policy (See Exhibit "A" ¶¶ 44-47). Maspeth also alleges, and FIS does not deny, that as a direct result of the failure to timely credit the mortgagors' payments, the mortgagors incurred improper late fees on their accounts, which

16

ultimately lead to their bringing the Class Action Lawsuit against Maspeth (See Exhibit "A" at ¶¶ 36, 49).

FIS breached its duty to Maspeth and its mortgagors by failing to program and maintain the Core System so that the mortgagors' accounts could be credited on the date that their Remittances were received in the Lockbox rather than on the date which FIS processed the Remittances, which in some cases was days after the Remittances were received in the Lockbox. The fact that FIS knew that some payments were received at the Lockbox after FIS picked up the Remittances for that day, but before the deadline for payment set forth in Maspeth's Late Policy, and yet did not appropriately account for or credit those payments, demonstrates that FIS showed a reckless indifference for the rights of Maspeth and its mortgagors.

FIS exclusively handled and controlled every aspect of receiving and collecting Remittances from the Lockbox and processing those Remittances in the core system, which was the system that FIS provided to Maspeth and programmed and maintained for Maspeth (See Exhibit "A" at ¶ 28). To do this, FIS had to know Maspeth's Late Fee Policy (See Exhibit "A" at ¶ 19). When FIS failed for over six years to properly credit the Remittances to the mortgagors' accounts as of the dates the Remittances were received in the Lockbox, causing late fees to be charged to mortgagors who were part of the class in the Class Action Lawsuit, FIS acted with willful disregard and reckless indifference to Maspeth, Maspeth's mortgagors and Maspeth's Late Fee Policy, to the detriment of Maspeth and its mortgagors.

Maspeth has pled sufficient allegations to show that FIS breached the duty it owed to Maspeth, that the breach of that duty proximately resulted in the damages claimed by Maspeth and that FIS's actions, or inactions, constituted a reckless disregard for the right of Maspeth and

its mortgagors to have the payments properly credited.  Accordingly, FIS's motion should be denied.

The cases cited by FIS in support of its motion merely set forth the elements to a gross negligence claim, exactly as are stated above.  Specifically, in order to state a cause of action for gross negligence, a plaintiff must allege that the defendant owed a duty to the plaintiff, that the defendant breached that duty, that the plaintiff suffered damages as a result of the defendant's breach, and that the defendant's actions showed a willful disregard for the rights of the plaintiff.  FIS's attempts to imply that New York courts require an *additional* showing of malice to support a gross negligence claim is both erroneous and misleading.  *See Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 544, 593 N.E.2d 1365 (N.Y. 1992).

Indeed, one of the cases cited by FIS, *Net2Globe Int'l, Inc. v. Time Warner Telecom of New York*, 273 F. Supp. 2d 436, 450 (S.D.N.Y. 2003), explains that the Court of Appeals has held that:

> [A]n exculpatory agreement ... will not exonerate a party from liability under  all circumstances.... [I]t will not apply to exemption of willful or grossly negligent acts ... [or when] the misconduct for which it would grant immunity smacks of intentional wrongdoing. This can be explicit, as when it is fraudulent, malicious or prompted by the sinister intention of one acting in bad faith.  *Or* when, as in gross negligence, it betokens a reckless indifference to the rights of others, it may be implicit.
> (Internal citations omitted) (Emphasis added)

Here, as Maspeth alleges in its amended complaint that FIS's breach of its duties evinced a reckless disregard for the rights of Maspeth and its mortgagors, Maspeth's gross negligence claim must be sustained.

Even if there is a question as to whether FIS's actions evince a reckless disregard for Maspeth and its mortgagor's rights, FIS's motion must be denied as discovery has not yet been

18

completed.  New York Courts have consistently held that a plaintiff cannot fully establish a claim for gross negligence until discovery is completed.  *See Travelers Indem. Co. of Conn. v. Losco Grp., Inc.*, 136 F. Supp. 2d 253, 256 (S.D.N.Y. 2001) (holding that the issue of gross negligence is a question of fact for the jury to determine and that plaintiff's claims for gross negligence cannot be fully established until discovery is completed).

In the instant matter, not only has discovery not been completed, but it has not even begun. At the least, discovery in this case must be completed in order to determine whether FIS showed a reckless disregard for the rights of Maspeth's mortgagors. Accordingly, defendant's motion to dismiss should be denied.

## V.    CONCLUSION

Maspeth has sufficiently stated causes of action for Breach of Contract, Contractual Indemnification and Gross Negligence in its amended Complaint against FIS and as such, FIS's motion to dismiss should be denied.

Dated:  February 19, 2016

Respectfully Submitted,

Mark L. Cortegiano, Esq.

/s/Mark L. Cortegiano
Mark L. Cortegiano, Esq.
65-12 69th Place
Middle Village, NY 11379
718-894-9500
Attorney for Plaintiff,
Maspeth Federal Savings and Loan
Association

On the Memorandum:
Diana J. Demirdjan, Esq.

19