UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MASPETH FEDERAL SAVINGS AND LOAN
ASSOCIATION,

        Plaintiff,

v.

FIDELITY INFORMATION SERVICES, LLC,

        Defendant.
------------------------------------------------------------X

FILED
CLERK

2017 AUG -1 PM 3: 34

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

**DECISION & ORDER**
15-CV-6006 (WFK) (CLP)

**WILLIAM F. KUNTZ, II, United States District Judge:**

In this diversity action, Maspeth Federal Savings and Loan Association ("Maspeth" or "Plaintiff") brings suit against Fidelity Information Services, LLC ("FIS" or "Defendant") for, *inter alia*, breach of two contracts under which Defendant was to provide Plaintiff with lockbox and remittance processing services. Specifically, Plaintiff alleges that Defendant's lockbox servicing procedures were incompatible with Plaintiff's late fee policy, resulting in the improper assessment of late fees to Plaintiff's customers—fees that Plaintiff ultimately refunded in order to settle a class action lawsuit brought by its customers. Plaintiff seeks to recover, *inter alia*, the amount of the late fees it refunded as well as attorneys' fees associated with the lawsuit. Defendant now moves to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Defendant's motion is GRANTED in part and DENIED in part.

## BACKGROUND[1]

Plaintiff is a federally chartered savings and loan association headquartered in New York that engages in the business of, *inter alia*, originating and servicing mortgages within the Eastern District of New York. Am. Compl. ¶ 1, ECF No. 13. Defendant is an Arkansas limited liability company headquartered in Florida that provides banking and payment technologies and

---

[1] The facts underlying this Decision are drawn from the Amended Complaint, *see* ECF No. 13, which incorporates by reference the contracts at issue here, *see* Cortegiano Decl. Ex. D & E, ECF Nos. 19-4 & 19-5. The Court also takes judicial notice of relevant filings in the related class action lawsuit, *Friedman v. Maspeth Fed. Loan & Sav. & Ass'n*, 13-CV-6295 (E.D.N.Y.) (Weinstein, J.), including the amended class action complaint and stipulation of settlement, which are attached as exhibits to the parties' briefs, *see* Cortegiano Decl. Ex. B & C, ECF Nos. 19-2 & 19-3. For the purpose of resolving the instant motion, the Court assumes all well-pleaded facts to be true, drawing all reasonable inferences in favor of Plaintiff. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

services—including remittance, lockbox, processing, and conversion services—to banks and other financial institutions throughout the United States. *Id.* ¶¶ 2-3.

This case centers on a pair of agreements under which Defendant maintained a lockbox to which some of Plaintiff's customers sent their mortgage payments (or remittances) and provided Plaintiff with remittance processing services. *Id.* ¶ 11. First, on or about January 22, 2003, the parties entered into the Master Agreement for Provision of Hardware, Software and/or Services ("Master Agreement") and the Lockbox Services Order ("LSO"), both of which were governed by a set of General Terms and Conditions ("2003 GTCs") (together, the "2003 Agreements"). *See* Cortegiano Decl. Ex. D; Am. Compl. ¶¶ 6, 10. Second, on or about April 30, 2013, the parties entered into the Information Technology Services Agreement ("ITSA") and the Remittance/Lockbox Processing Services Addendum ("RLPSA"), both of which were governed by a different set of General Terms and Conditions ("2013 GTCs") (together, the "2013 Agreements"). *See* Cortegiano Decl. Ex. E; Am. Compl. ¶¶ 9-10. Together, these agreements governed the scope of Defendant's obligations to retrieve and process mortgage payments made by Plaintiff's customers. Am. Compl. ¶ 11. In addition, although not specified in the parties' agreements, the Amended Complaint alleges Defendant knew or should have known Plaintiff maintained a policy throughout the relevant contractual period that any remittance received by 8:00 P.M. on the sixteenth day of the month when due would not incur a late charge. *Id.* ¶ 17.

On or about November 20, 2013, Plaintiff was served with a class action complaint that had been filed by a group of its customers, which asserted causes of action for: (1) violations of the Real Estate Settlement Procedures Act; (2) violations of section 349 of the New York General Business Law; (3) breaches of the implied duties of good faith and fair dealing; (4) breach of contract; and (5) unjust enrichment. *See* Amended Class Action Complaint

("ACAC"), *Friedman v. Maspeth Fed. Loan & Sav. & Ass'n*, 13-CV-6295 (E.D.N.Y. Nov. 13, 2013) (Weinstein, J.), ECF No. 17; *see also* Am. Compl. ¶¶ 24-25. Specifically, the suit alleged, *inter alia*, that members of the class were improperly assessed late fees by Maspeth even though, under the provisions of Maspeth's late fee policy, their mortgage payments were timely remitted and delivered to the lockbox. *See* Am. Compl. ¶¶ 26-27. According to Plaintiff, Defendant was solely responsible for servicing the lockbox at all times relevant to the class action lawsuit, and it failed properly or timely process remittances or credit customers' accounts with payment. *Id.* ¶ 28.

On or about December 6, 2013, Plaintiff sent a written notice of claim and demand for indemnification to Defendant, which notified Defendant of the class action lawsuit and provided it with a copy of the class action complaint. *Id.* ¶ 29. On or about December 20, 2013, Defendant acknowledged receipt of Plaintiff's notice, but it neither accepted nor rejected Plaintiff's demand and merely stated it would research the issues in the lawsuit. *Id.* ¶ 30. As a result, Plaintiff undertook to defend the lawsuit at its own expense. *Id.* ¶ 31. On or about October 3, 2014, Plaintiff again demanded in writing that Defendant indemnify it for any losses resulting from the lawsuit, including but not limited to any late fees it might refund as part of a settlement, its related attorneys' fees, and any award of attorneys' fees the court might make to the class plaintiffs' counsel. *See id.* ¶ 32. On or about October 22, 2014, Defendant notified Plaintiff that it would not indemnify Plaintiff as against the class claims. *Id.* ¶ 33. Thereafter, the parties engaged in negotiations, but they failed to resolve Plaintiff's claim. *Id.* ¶ 34.

On or about December 19, 2014, Maspeth executed a settlement agreement to resolve the class action lawsuit, under which it made available over $200,000.00 to its customers who were potential claimants in the suit and agreed to pay up to $535,000.00 in class plaintiffs' attorneys'

fees, subject to court approval. *Id.* ¶¶ 35-36. *See generally* Stipulation of Settlement, *Friedman v. Maspeth Fed. Loan & Sav. & Ass'n*, 13-CV-6295 (E.D.N.Y. Dec. 19, 2014) (Weinstein, J.), ECF No. 48-3. On or about April 23, 2015, after a motion on notice and a hearing, U.S. District Judge Jack B. Weinstein approved the stipulation of settlement by order and judgment and awarded $535,000.00 in legal fees to class plaintiffs' counsel. Am. Compl. ¶ 37.

On October 20, 2015, Plaintiff filed this action for breach of contract, gross negligence, contractual indemnification, and common law indemnification. *See generally* Compl., ECF No. 1. On December 24, 2015, it filed an Amended Complaint, which alleges, *inter alia*, that Defendant breached the parties' agreements by failing properly to service the lockbox and process remittance payments in accordance with Plaintiff's late fee policy, which resulted in the improper assessment of late fees to Plaintiff's customers. *See* Am. Compl. ¶¶ 17-20, 28, 44-47. The Amended Complaint seeks damages "in an amount not less than $857,130.95," *id.* ¶ 41, consisting of: (1) payments to class plaintiffs' attorneys pursuant to the judgment in the class action lawsuit, *id.* ¶ 38; (2) payments to qualified claimants who filed claims pursuant to the approved class settlement, *id.* ¶ 39; and (3) legal fees incurred in defending and resolving the class action lawsuit, *id.* ¶ 40.

On March 18, 2016, Defendant filed a fully briefed motion to dismiss Plaintiff's Amended Complaint. *See* Def. Br., ECF No. 18; Pl. Resp., ECF No. 20; Cortegiano Decl., ECF No. 19; Def. Reply, ECF No. 21.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must be dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. In considering a motion to dismiss, the Court must accept all of the non-movant's factual allegations as true and draw all reasonable inferences in the non-movant's favor. *Id.* at 555. However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).

## DISCUSSION

### I. Breach of Contract

Defendant contends Plaintiff's breach of contract claim must be dismissed because it seeks consequential damages, which are barred under the parties' agreements. This argument is misplaced, however, as Defendant concedes that at least some of Plaintiff's alleged damages constitute general damages, *see* Def. Br. at 9; Def. Reply at 2, which are not barred under the agreements. Under New York law, "to state a claim for breach of contract, the complaint must allege: (i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011) (citations omitted).

Here, the Amended Complaint adequately alleges each element, and Defendant does not argue otherwise. Indeed, "for purposes of its motion to dismiss, FIS accepts that it breached the parties' Agreements," Def. Reply at 6, and admits that Plaintiff suffered damages as a result, *see*

*id.* at 2-3. Instead, both parties assert that their dispute turns on "the classification of Maspeth's damages and whether such damages are covered under the explicit terms of the Agreements." *Id.* at 6; *accord* Pl. Resp. at 6 ("FIS does not deny that it breached [its] duty to Maspeth, or that Maspeth suffered damages as a direct result of that breach. Rather, FIS claims . . . that the limitation of liability language contained in the Agreements is a bar to Maspeth's recovery on a breach of contract claim and thus is a basis for dismissal of the claim."). Relevant here, and as discussed in further detail in Part IV below, Defendant concedes that "the amount of money in late fees that were incurred by Maspeth's mortgagors as a result of FIS's alleged breach of contract" would constitute general damages. Def. Br. at 9; *accord* Def. Reply at 2 ("[T]he direct return of late fees could fall under the ambit of general damages."). Because Plaintiff has pleaded all the required elements of a breach of contract claim, Defendant's motion to dismiss that claim is denied.

## II.  Contractual Indemnification

Defendant next moves to dismiss Plaintiff's contractual indemnification claim on the ground that it falls outside the scope of the indemnification provisions in the parties' agreements. With respect to indemnification, the 2003 Agreements read in pertinent part as follows:

> 13.6. <u>Indemnification</u>. Subject to Section 8,[2] InterCept and Customer shall indemnify and hold harmless the other Party against all claims, liabilities, losses, damages, and causes of action relating to (i) *personal injury or property damage* arising out of the intentional or negligent acts or omissions of the Party in the course of performance under this Agreement or any Related Agreement . . . .

2003 GTCs at 11 (emphasis added). Similarly, the 2013 Agreements provide:

> 10.2  FIS shall defend Client and its officers, employees, directors, agents and shareholders, in their individual capacities or otherwise, from and against any and all Claims (as defined in this Section 10.2) asserted by a third party (other than an Affiliate of Client) against Client, and shall indemnify and hold harmless Client from and against any damages, costs, and expenses of such third party awarded

---

[2] *See infra* Part IV.

> against Client by a final court judgment or an agreement settling such Claims in accordance with this Section 10.2. As used in this Section 10.2, the term "Claim" means any action, litigation, or claim by a third party alleging (i) *personal injury or property damage* caused by FIS's gross negligence or willful misconduct in connection with this Agreement . . . .

2013 GTCs at 6 (emphasis added). The parties' dispute here centers primarily on their competing characterizations of the class action claims brought against Plaintiff—specifically, whether or not they may be considered claims for "personal injury or property damage."

According to Defendant, "Maspeth's claim falls outside of the applicable scope of the indemnification provisions and should therefore be dismissed" because "[b]oth Maspeth's Amended Complaint and the Class Action allege only economic losses," as opposed to personal injury or property damage. Def. Br. at 11. In support of its argument, Defendant cites two cases that considered the classification of damages in the context of indemnification agreements. In *Franklin Street Development Ltd. v. MZM Corp.*, 96-CV-0812, 1997 WL 795781, at *2, 8 (E.D.N.Y. Dec. 30, 1997) (McKenna, J.), a court in this District held that damages including "cost overruns, carrying charges, and a reduction in the selling price of . . . condominium units due to the delay in their availability and the intervening decline in the real estate market" constituted "mere economic loss" and thus did not fall within the scope of an indemnity provision that applied only to "claims for damages arising out of personal injuries or injury to property." Similarly, in *Dormitory Authority v. Scott*, 553 N.Y.S.2d 149, 151-52 (1st Dep't 1990), the Appellate Division of the Supreme Court of the State of New York held that "errors and omissions by [a] subcontractor in connection with its performance under [a] contract" also constituted only economic losses, which did not fall within the scope of a similar indemnification clause.

7

Without offering additional analysis or legal authority, Plaintiff argues Defendant is incorrect and these cases are inapposite because Plaintiff "seeks indemnification for defending the Class Action Lawsuit which included claims for personal injury." Pl. Resp. at 14-15. Specifically, Plaintiff relies on an allegation in the ACAC in which the class plaintiffs asserted that, "[i]n addition to pecuniary losses, [p]laintiff and the Class suffered actual harm as a result of Maspeth's violations of [New York General Business Law] §349(a), including, but not limited to, the annoyance, harassment, time, frustration, anger, and anxiety incurred by [p]laintiff and the Class due to Maspeth's violations of §349." ACAC ¶ 60; *see also* Pl. Resp. at 14 (quoting same).

In response, Defendant counters that (1) "'annoyance, harassment, time, frustration, anger and anxiety' could not reasonably be construed to comprise personal injuries under the indemnification provisions in the Agreements," (2) a section 349 claim is not the type of claim "that falls under the realm of personal injury, [and] the substance of the claim hardly, if at all, resembles such an action," and (3) "no specific instances of injury are alleged by the class other than the blanket statement of benign 'disturbances' provided above." Def. Reply at 6. On balance, the Court agrees with Defendant.

Plaintiff's Amended Complaint contains no allegations with respect to any class claims for personal injuries and this Court is not bound to accept legal conclusions couched as factual allegations in Plaintiff's brief. Instead, the Court looks to the ACAC, motion for settlement approval, and other relevant documents filed in the class action lawsuit to determine the nature of the class plaintiffs' claims. *Cf. Rothberg v. Phil's Main Roofing, LLC*, 14-CV-10195, 2017 WL 1162904, at *7-9 (S.D.N.Y. Mar. 24, 2017) (Roman, J.) (explaining that, in the context of contribution claims, when determining whether an action lies in contract or in tort—that is,

whether it is for "purely economic loss" or for injury to property—"courts consider the nature of the damages sought by the plaintiff in the main action"). Relevant here, at the outset of the ACAC, the class plaintiffs assert that they seek "to enjoin and remedy the[] oppressive and unconscionable practices which breach the contractual agreements between the parties, constitute unfair and deceptive acts and practices, and otherwise violate the law." ACAC ¶ 25. Thereafter, they define the class as "[a]ll persons whose mortgages are or have been serviced by Maspeth, and have been or are subject to Maspeth's improper imposition of late charges." *Id.* ¶ 26. As to damages, they note that "the damages suffered by each member of the Class are relatively small," *id.* ¶ 32, and seek only compensatory, statutory, and exemplary damages, *see id.* at 16, with no mention of compensation for non-pecuniary injuries or medical expenses. Finally, in a memorandum in support of their motion for preliminary approval of the class settlement, the class plaintiffs describe "compensat[ing] any Class Member who was charged an Incorrect Late Fee" as "the crux of this lawsuit" and assert that such improperly assessed late fees constitute "100% of their losses," which would be fully recovered through the settlement. Mem. in Supp. for Prelim. Approval of Class Action Settlement at 1, 6-7, *Friedman v. Maspeth Fed. Loan & Sav. & Ass'n*, 13-CV-6295 (E.D.N.Y. Dec. 19, 2014) (Weinstein, J.), ECF No. 48-1. Together, these characterizations indicate that the damages sought, and ultimately received, by the class plaintiffs were solely for economic losses—namely, the amount of the improperly assessed late fees—and not personal injuries.

Moreover, as Defendant notes, the allegations in the ACAC that Plaintiff cites in support of its personal injury argument are associated with a claim brought under section 349 of the New York General Business Law, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service," N.Y. Gen. Bus. Law § 349(a),

and provides that "any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions," *id.* § 349(h). As such, the paragraph preceding the one Maspeth cites states that, "[a]s a direct and proximate result of Maspeth's violations of GBL §349(a), [p]laintiff and the Class suffered actual losses, damages, and injuries, including Maspeth's imposition and collection of late charges that should not have been imposed or collected." ACAC ¶ 59. Although the class plaintiffs do subsequently list "annoyance, harassment, time, frustration, anger, and anxiety" as additional injuries caused by the violation, *id.* ¶ 60, they fail to allege any actual damages resulting from these harms. Indeed, proof of such damages would likely have been highly individualized and difficult to show on a class-wide basis. *Cf. Small v. Lorillard Tobacco Co., Inc.*, 679 N.Y.S.2d 593, 598 (1st Dep't 1998) (noting plaintiffs' attempt, in similar class action alleging violations of section 349, to avoid issue of individualized proof by "seek[ing] compensation only for economic losses as consumers, not personal injury damages" arising from ill health caused by smoking). Ultimately, because it is clear that the class plaintiffs were seeking to recover for purely economic losses, Maspeth's contractual indemnification claim falls outside of the scope of the parties' indemnification agreements, and Defendant's motion to dismiss that claim must be granted.

### III. Quasi-Contract Claims

Finally, Defendant argues Plaintiff's claims for gross negligence and common law indemnification are duplicative of Plaintiff's breach of contract claim and thus barred under New York law. The Court agrees. "Under New York law, where there is a breach of contract claim and a valid, enforceable contract is found, a court will not recognize separate causes of action for . . . common law indemnity, [or] gross negligence." *PNC Bank, N.A. v. Wolters Kluwer Fin.*

*Servs., Inc.*, 73 F. Supp. 3d 358, 370 (S.D.N.Y. 2014) (Engelmayer, J.) (collecting cases); *see also Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 58 (2d Cir. 2012) ("Under New York law, a breach of contract will not give rise to a tort claim unless a legal duty independent of the contract itself has been violated.").

The parties have a valid, enforceable contract. Plaintiff's gross negligence claim, like its contract-based claims, is based on alleged duties that all stem directly from the parties' agreements. *See* Am. Compl. ¶¶ 51-53 (alleging breaches of purely contractual duties). Where, as here, "the basis of a party's claim is a breach of solely contractual obligations, such that the plaintiff is merely seeking to obtain the benefit of the contractual bargain through an action in tort, the claim is precluded as duplicative." *Bayerische Landesbank*, 692 F.3d at 58. Similarly, Plaintiff pleads its common law indemnification claim "in the alternative" to its contract-based indemnification claim, Am. Compl. ¶ 74, but it does not allege facts supporting any alternative basis for the claim or respond to Defendant's arguments to dismiss it. Accordingly, Defendant's motion to dismiss Plaintiff's claims for gross negligence and common law indemnification is granted.

### IV. Recoverable Damages

Under New York law, only two types of damages may be pleaded in breach of contract cases: (1) general damages and (2) consequential damages. *See PNC Bank*, 73 F. Supp. 3d at 370. In this case, the parties agree that their contracts explicitly waive the recovery of consequential damages and thus permit only general damages. *See* Pl. Resp. at 7 ("[T]he limitation of liability language . . . limits Maspeth's recovery to *general* damages arising out of

FIS's breach of the contract.").[3] Their dispute centers instead on whether the three categories of damages Plaintiff seeks—including the repayment of late fees to its customers pursuant to the class settlement agreement, *see* Am. Compl. ¶ 39—constitute general or consequential damages. Significantly, Defendant concedes that "the amount of money in late fees that were incurred by Maspeth's mortgagors as a result of FIS's alleged breach of contract" would constitute general damages, Def. Br. at 9; *accord* Def. Reply at 2 ("FIS agrees with Maspeth that the direct return of late fees could fall under the ambit of general damages."), and thus be recoverable under the parties' agreements. Accordingly, because the parties agree that Plaintiff may be able to plead at least some damages and Plaintiff's breach of contract claim is otherwise adequately pleaded, the Court need not address their dispute regarding the classification of attorneys' fees at the motion to dismiss stage without the benefit of additional discovery.[4]

---

[3] Specifically, their agreements provide in relevant part as follows:
> 8.6. LIMITATION OF LIABILITY. IN NO EVENT SHALL INTERCEPT BE LIABLE FOR ANY SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES RESULTING FROM THE USE, OR INABILITY TO USE, ANY PRODUCTS PROVIDED OR LICENSED TO CUSTOMER HEREUNDER, FOR ANY FAILURE TO PROVIDE SERVICES, FOR ANY ERROR IN THE PROVISION OF PRODUCTS OR SERVICES TO CUSTOMER UNDER THIS AGREEMENT, OR ARISING OUT OF ANY OTHER CIRCUMSTANCES ASSOCIATED WITH THE SUBJECT MATTER OF THIS AGREEMENT INCLUDING WITHOUT LIMITATION DAMAGES BASED ON LOSS OF PROFIT, LOSS OR INTERRUPTION OF DATA OR COMPUTER TIME, OR ALTERATION OR ERRONEOUS TRANSMISSION OF DATA, EVEN IF INTERCEPT IS ADVISED IN ADVANCE OF THE POSSIBILITY OF SUCH DAMAGES.

2003 GTCs at 8-9 (emphasis added). And:
> 11.1 Limitation of Liability.... *FIS SHALL NOT BE LIABLE FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, DELAY OR PUNITIVE DAMAGES WHATSOEVER* (INCLUDING BUT NOT LIMITED TO, DAMAGES FOR LOSS OF BUSINESS PROFITS OR REVENUE, BUSINESS INTERRUPTION, LOSS OF INFORMATION, OR OTHER PECUNIARY LOSS), EVEN IF FIS WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGE.

2013 GTCs at 6 (emphasis added).

[4] The Court notes, however, that any recovery likely would be further limited, although not precluded, by the liability caps in the parties' agreements. *Compare* 2003 GTCs at 9 ("8.7. LIABILITY CAP. INTERCEPT'S TOTAL LIABILITY TO CUSTOMER UNDER ANY PROVISION OF THIS AGREEMENT OR ANY RELATED AGREEMENT (WHETHER BASED ON TORT, CONTRACT, OR ANY OTHER THEORY), OTHER THAN CLAIMS BASED UPON THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF INTERCEPT, SHALL BE LIMITED TO THE AMOUNT ACTUALLY PAID BY CUSTOMER FOR THE PRODUCT OR SERVICE GIVING RISE TO THE LIABILITY...."), *with* 2013 GTCs at 6 ("11.1 Limitation of Liability. FIS'S TOTAL LIABILITY FOR A SERVICE IS LIMITED IN ALL CASES AND IN THE AGGREGATE TO THE AMOUNT OF FEES ACTUALLY PAID BY CLIENT FOR THE CORRESPONDING SERVICE DURING THE SIX (6) MONTHS PRECEDING THE DATE OF THE EVENT THAT IS THE BASIS FOR THE FIRST CLAIM....").

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED in part and DENIED in part. The Clerk of Court is directed to terminate the motion pending at ECF No. 17.

**SO ORDERED.**

Honorable William F. Kuntz, II

/s/ HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: August 1, 2017
      Brooklyn, New York